## STATE OF CONNECTICUT *v.* JESSIE GARRISON
### (12731)

PETERS, C. J., HEALEY, DANNEHY, SANTANIELLO and CALLAHAN, Js.

Argued March 6—decision released April 15, 1986

*Stuart Friedman* and *Theodore Baldwin-LeClair,* certified legal interns, with whom was *Timothy H. Everett,* for the appellant (defendant).

*Judith Rossi,* deputy assistant state's attorney, with whom were *James G. Clark,* deputy assistant state's attorney, and, on the brief, *Warren Maxwell,* assistant state's attorney, for the appellee (state).

PER CURIAM. The defendant, Jessie Garrison, was convicted, after a trial to the court, of manslaughter in the first degree with a firearm in violation of General Statutes §§ 53a-55 (a) (1) and 53a-55a (a).[1] In his trial, the defendant relied on the defenses of self-defense under General Statutes § 53a-19[2] and defense-of-premises under General Statutes § 53a-20.[3] The trial

---

[1] "[General Statutes] Sec. 53a-55. MANSLAUGHTER IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of manslaughter in the first degree when: (1) With intent to cause serious physical injury to another person, he causes the death of such person or of a third person."

"[General Statutes] Sec. 53a-55a. MANSLAUGHTER IN THE FIRST DEGREE WITH A FIREARM: CLASS B FELONY: ONE YEAR NOT SUSPENDABLE. (a) A person is guilty of manslaughter in the first degree with a firearm when he commits manslaughter in the first degree as provided in section 53a-55, and in the commission of such offense he uses, or is armed with and threatens the use of or displays or represents by his words or conduct that he possesses a pistol, revolver, shotgun, machine gun, rifle or other firearm. No person shall be found guilty of manslaughter in the first degree and manslaughter in the first degree with a firearm upon the same transaction but such person may be charged and prosecuted for both such offenses upon the same information."

[2] General Statutes § 53a-19 provides in relevant part: "Sec. 53a-19. USE OF PHYSICAL FORCE IN DEFENSE OF PERSON. (a) Except as provided in subsections (b) and (c) a person is justified in using reasonable physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly physical force may not be used unless the actor reasonably believes that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm.

"(b) Notwithstanding the provisions of subsection (a), a person is not justified in using deadly physical force upon another person if he knows that he can avoid the necessity of using such force with complete safety (1) by retreating, except that the actor shall not be required to retreat if he is in his dwelling, as defined in section 53a-100, or place of work and was not the initial aggressor, or if he is a peace officer or a private person assisting such peace officer at his direction, and acting pursuant to section 53a-22, or (2) by surrendering possession of property to a person asserting a claim of right thereto, or (3) by complying with a demand that he abstain from performing an act which he is not obliged to perform."

[3] "[General Statutes] Sec. 53a-20. USE OF PHYSICAL FORCE IN DEFENSE OF PREMISES. A person in possession or control of premises, or a person

court rejected these defenses and found the defendant guilty as charged. In his appeal, the defendant raises three issues: the propriety of the standard applied by the court in its rejection of the defense of self-defense; the sufficiency of the evidence to support rejection of the defense of self-defense; and the sufficiency of the evidence to support the rejection of the defense of defense-of-premises.

The trial court's judgment that the defendant was guilty of the crime with which he had been charged was supported by an oral memorandum of decision specifically addressing self-defense under § 53a-19 and a written memorandum of decision clarifying the court's conclusion with respect to § 53a-20. In these two memoranda the court found the following facts. On the evening of January 2, 1982, the defendant was visiting at his sister's apartment to watch her television. The decedent, Jeremiah Sharp, entered the apartment, obviously drunk, staggering and argumentative. The decedent and the defendant's sister had been living together for a number of years but had recently quarreled, and the decedent had come to remove his belongings from the apartment. The decedent and the defendant's sister engaged in a heated argument which the defendant endeavored to stop. There followed a confrontation between the defendant and the decedent about the decedent's continued presence on the premises. The

who is licensed or privileged to be in or upon such premises, is justified in using reasonable physical force upon another person when and to the extent that he reasonably believes it is necessary to prevent or terminate the commission or attempted commission of a criminal trespass by such other person in or upon such premises; but he may use deadly physical force under such circumstances only (1) in defense of a person as described in section 53a-19, or (2) when he reasonably believes it is necessary to prevent an attempt by the trespasser to commit arson or any crime of violence, or (3) to the extent that he reasonably believes it necessary to prevent or terminate an unlawful entry by force into his dwelling as defined in section 53a-100 or place of work, and for the sole purpose of such prevention or termination."

defendant observed the decedent reaching inside his jacket and noticed a pistol in the decedent's waistband. Although the defendant was smaller than the decedent, he was younger, alert and sober, and he succeeded in disarming the decedent as the latter was drawing the pistol from his belt. The decedent then armed himself with a steak knife and advanced toward the defendant with the knife raised. The defendant backed up, and fired a shot hitting the decedent in the left ankle. The defendant then fired a second shot causing the fatal injury.

The trial court, in its oral memorandum of decision, concluded that this evidence sufficiently raised the defense of self-defense under § 53a-19 to impose upon the state the burden of proving beyond a reasonable doubt that the defense was unavailing. It specifically found that the decedent's effort to attack the defendant would cause a reasonable person to believe that the attacker was about to slash him, and that such a slashing could constitute great bodily harm. The court concluded nonetheless that the state had met its burden of proof because "the defendant, having had the ability to disarm [the decedent] of the revolver could easily have disarmed him, or could have retreated, and avoided him at the time when he was wielding the steak knife." The court made no subordinate findings of fact to substantiate this conclusion.

Upon the motion of the defendant, the trial court filed a written memorandum of decision to clarify its conclusion with regard to self-defense under § 53a-20. Insofar as it is relevant to this case, § 53a-20 justifies the use of deadly physical force when a person privileged to be upon the premises, reasonably believing that force is necessary "to prevent or terminate the commission or attempted commission of a criminal trespass," uses deadly physical force "(1) in defense of a person as prescribed in section 53a-19, or (2) when he reasonably

believes it is necessary to prevent an attempt by the trespasser to commit . . . any act of violence . . . ." Without determining whether the decedent's presence in the apartment of the defendant's sister constituted a criminal trespass, the court found that neither of the relevant subordinate conditions authorizing deadly physical force had been demonstrated. Consistently with the conclusion it had earlier reached in its oral memorandum, the court reiterated that the defendant's use of deadly physical force was not "in defense of a person [as] described in Sec. 53a-19" because "it was established beyond a reasonable doubt that the decedent in his condition was not capable of using deadly force once he was disarmed." The court further concluded that there was no credible evidence that the defendant "reasonably believed [such force] necessary to prevent the decedent from committing a crime of violence." The court made no further findings of fact with reference to these conclusions.

The parties are in substantial agreement that the statutes that codify the rights of self-defense and defense-of-premises focus on the perspective of the person claiming these defenses. The self-defense statute, in § 53a-19 (a), permits the use of deadly physical force only when "the actor reasonably believes that [his attacker] is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm." As we have repeatedly noted, this language presents a question of fact about what the defendant himself reasonably believed about his exposure to jeopardy under the circumstances. *State* v. *DeJesus,* 194 Conn. 376, 389, 481 A.2d 1277 (1984); *State* v. *Corchado,* 188 Conn. 653, 663, 453 A.2d 427 (1982). Similar language in § 53a-19 (b) requires recourse to retreat in lieu of the use of physical force only when the actor himself "knows that he can avoid the necessity of using such force with complete safety . . . ."

The defense-of-premises statute, § 53a-20, since it refers to what "he reasonably believes," likewise refers to the perception of the person alleged to have been using deadly physical force.

The defendant claims, however, that the factual findings of the trial court do not justify its judgment because the court's findings do not address the evidence at trial from his perspective. The trial court rejected the defense of self-defense despite its finding that the decedent, armed with his steak knife, approached the defendant in a manner "which would cause a reasonable person to believe that he was about to slash him." Although there was conflicting evidence at trial about such critical matters as the location of the combatants at the time of their confrontation, the defendant's own perception of his peril, and the defendant's efforts to avoid the use of deadly physical force, the court failed to make any factual findings to identify what led it to conclude that the defendant himself reasonably believed that he could safely disarm the decedent or retreat. The trial court concluded that the defense-of-premises defense had been refuted without finding whether the decedent was a criminal trespasser or whether the defendant was privileged to be on the premises. On this state of the record, we cannot determine whether the state has established, beyond a reasonable doubt, the defendant's guilt of the crime of manslaughter. For the proper disposition of this case, it is necessary for us to order a remand to the trial court for further articulation of the grounds on which it determined that the state had proved the inapplicability of the defenses of self-defense and defense-of-premises. See Practice Book § 3060D;[4] *State* v. *Cobbs,* 198 Conn. 638, 643, 504

---

[4] "[Practice Book] § 3060D. REVIEW BY THE SUPREME COURT

"The supreme court may reverse or modify the decision of the trial court if it determines that the decision is clearly erroneous in view of the evidence and pleadings in the whole record.

"If the supreme court deems it necessary to the proper disposition of

A.2d 513 (1986); *State* v. *Lafferty,* 189 Conn. 360, 363, 456 A.2d 272 (1983); *Kaplan* v. *Kaplan,* 185 Conn. 42, 46, 440 A.2d 252 (1981); *State* v. *Ostroski,* 184 Conn. 455, 460–61, 440 A.2d 166 (1981), cert. denied, 459 U.S. 878, 103 S. Ct. 173, 74 L. Ed. 2d 142 (1982). The trial court is directed to file a supplemental memorandum of decision answering the following questions and articulating the factual basis for its answers: (1) Was the defendant's use of force excessive because he reasonably believed that he could have disarmed the decedent? (2) Was the defendant's use of force excessive because he knew that he could retreat with complete safety? (3) Was the decedent on the premises as a criminal trespasser? (4) Was the defendant a person privileged to be in or upon the premises?

The case is remanded to the trial court with direction to file a memorandum of decision in accordance with this opinion.

the cause, it may remand the case for a further articulation of the basis of the trial court's decision.

"It is the responsibility of the appellant to provide an adequate record for review."