STATE OF CONNECTICUT *v.* JESSIE GARRISON
(12731)

PETERS, C. J., HEALEY, CALLAHAN, BORDEN and FRACASSE, Js.

Argued April 2—decision released May 12, 1987

*Timothy H. Everett,* with whom, on the brief, were *Stuart Friedman* and *Theodore Baldwin-LeClair,* legal interns, for the appellant (defendant).

*Judith Rossi,* deputy assistant state's attorney, with whom, on the brief, were *James G. Clark* and *Warren Maxwell,* assistant state's attorneys, for the appellee (state).

PETERS, C. J. The basic issue in this appeal is the sufficiency of the evidence to support the conviction of the defendant, Jessie Garrison, after a trial to the court, of manslaughter in the first degree with a firearm in violation of General Statutes §§ 53a-55 (a) (1) and 53a-55a (a).[1] When this case was first appealed one year ago, we remanded for further articulation by the trial court of its reasons for rejecting the two defenses on which the defendant had relied, self-defense under General Statutes § 53a-19[2] and defense of premises

---

[1] General Statutes § 53a-55 (a) (1) provides: "MANSLAUGHTER IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of manslaughter in the first degree when: (1) With intent to cause serious physical injury to another person, he causes the death of such person or of a third person."

"[General Statutes] Sec. 53a-55a. MANSLAUGHTER IN THE FIRST DEGREE WITH A FIREARM: CLASS B FELONY: ONE YEAR NOT SUSPENDABLE. (a) A person is guilty of manslaughter in the first degree with a firearm when he commits manslaughter in the first degree as provided in section 53a-55, and in the commission of such offense he uses, or is armed with and threatens the use of or displays or represents by his words or conduct that he possesses a pistol, revolver, shotgun, machine gun, rifle or other firearm. No person shall be found guilty of manslaughter in the first degree and manslaughter in the first degree with a firearm upon the same transaction but such person may be charged and prosecuted for both such offenses upon the same information."

[2] General Statutes § 53a-19 provides in relevant part: "USE OF PHYSICAL FORCE IN DEFENSE OF PERSON. (a) Except as provided in subsections (b) and (c) a person is justified in using reasonable physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly physical force may not be used unless the

under General Statutes § 53a-20.[3] *State* v. *Garrison*, 199 Conn. 383, 507 A.2d 467 (1986) (*Garrison I*).[4] In light of the supplemental memorandum subsequently filed by the trial court, the defendant now renews his appeal from the judgment against him. We find no error.

---

actor reasonably believes that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm.

"(b) Notwithstanding the provisions of subsection (a), a person is not justified in using deadly physical force upon another person if he knows that he can avoid the necessity of using such force with complete safety (1) by retreating, except that the actor shall not be required to retreat if he is in his dwelling, as defined in section 53a-100, or place of work and was not the initial aggressor, or if he is a peace officer or a private person assisting such peace officer at his direction, and acting pursuant to section 53a-22, or (2) by surrendering possession of property to a person asserting a claim of right thereto, or (3) by complying with a demand that he abstain from performing an act which he is not obliged to perform."

[3] "[General Statutes] Sec. 53a-20. USE OF PHYSICAL FORCE IN DEFENSE OF PREMISES. A person in possession or control of premises, or a person who is licensed or privileged to be in or upon such premises, is justified in using reasonable physical force upon another person when and to the extent that he reasonably believes it is necessary to prevent or terminate the commission or attempted commission of a criminal trespass by such other person in or upon such premises; but he may use deadly physical force under such circumstances only (1) in defense of a person as prescribed in section 53a-19, or (2) when he reasonably believes it is necessary to prevent an attempt by the trespasser to commit arson or any crime of violence, or (3) to the extent that he reasonably believes it necessary to prevent or terminate an unlawful entry by force into his dwelling as defined in section 53a-100 or place of work, and for the sole purpose of such prevention or termination."

[4] The remand for articulation directed the trial court "to file a supplemental memorandum of decision answering the following questions and articulating the factual basis for its answers: (1) Was the defendant's use of force excessive because he reasonably believed that he could have disarmed the decedent? (2) Was the defendant's use of force excessive because he knew that he could retreat with complete safety? (3) Was the decedent on the premises as a criminal trespasser? (4) Was the defendant a person privileged to be in or upon the premises?" *State* v. *Garrison,* 199 Conn. 383, 389, 507 A.2d 467 (1986).

The underlying facts that led to the charges against the defendant are undisputed. As reported in *Garrison I,* supra, 385–86, and in the trial court's three memoranda of decision, the defendant, on January 2, 1982, was visiting at his sister's Hartford apartment, when the victim, Jeremiah Sharp, arrived on the premises. The victim had been living with the defendant's sister intermittently for the past four years, and had his clothes in the apartment, but they had recently quarreled anew. The victim arrived intoxicated, and immediately got into an argument with the defendant's sister, which the defendant tried to stop. The defendant's sister went to her bedroom, but the argument continued between the defendant and the victim, with the defendant urging the victim to leave.

In the course of the argument between the defendant and the victim, the victim reached inside his jacket and the defendant noticed that the victim had a pistol in his waistband. Although the victim was the larger man, the defendant was younger, alert and sober, while the victim was drunk, staggering and not in full control of himself. The defendant disarmed the victim by removing the pistol from his waistband. The victim then armed himself with a steak knife and advanced toward the defendant with the knife held high. The defendant backed up, and fired a shot, hitting the victim in the left ankle. Instead of backing up further into an adjacent room, the defendant fired a second shot which caused a fatal injury to the victim.

On these facts, the defendant moved for a judgment of acquittal of manslaughter for three reasons. He urged the trial court to conclude that the state had failed to prove beyond a reasonable doubt that: (1) the defendant knew he could avoid using deadly physical force with complete safety by retreating; General Statutes § 53a-19; (2) the defendant was not acting to prevent an attempt by a criminal trespasser to commit a

crime of violence on the premises; General Statutes § 53a-20; and (3) the defendant had the requisite intent to cause serious physical injury. The trial court denied this motion and found the defendant guilty as charged. On appeal, the defendant continues to maintain that the state did not meet its burden of proof on the first two of these claims of justification, self-defense and defense of premises. We will address these claims separately. We find neither to be persuasive.

I

A person is justified in using deadly physical force, under the self-defense statute, § 53a-19 (a), only when he reasonably believes such force to be necessary because he "reasonably believes that [his attacker] is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm." Even then, under § 53a-19 (b), with exceptions not applicable here, "a person is not justified in using deadly physical force upon another person if he knows that he can avoid the necessity of using such force with complete safety . . . by retreating . . . ." As we noted in *Garrison I,* supra, 387, § 53a-19 "presents a question of fact about what the defendant himself reasonably believed about his exposure to jeopardy under the circumstances. *State* v. *DeJesus,* 194 Conn. 376, 389, 481 A.2d 1277 (1984); *State* v. *Corchado,* 188 Conn. 653, 663, 453 A.2d 427 (1982)."

Viewing the evidence from this perspective, the defendant maintains that the trial court was in error in its conclusion that his use of deadly physical force was not justified. The trial court determined that "[t]he defendant could not have reasonably believed the use of deadly physical force was necessary if he reasonably believed he could have disarmed the decedent." The court relied on the defendant's prior disarming of the victim of his pistol, and on the defendant's sobriety and

alertness in contrast to the victim's staggering inebriation, in further concluding that "the defendant could have thrown the decedent off balance, disarmed him of his knife, and avoided the use of deadly physical force." Therefore, according to the court, the defendant's use of force was excessive. The defendant criticizes these conclusions because they are not based on a finding that the defendant himself knew or believed that he might have been able to avoid using deadly force by disarming his attacker.

The state replies that the trial court was entitled, as the trier of fact, to make a determination about the circumstances as they appeared to the defendant. Such a determination required the court to draw inferences from the facts that had been placed in evidence. *State* v. *Gabriel,* 192 Conn. 405, 425, 473 A.2d 300 (1984); *State* v. *Scielzo,* 190 Conn. 191, 198–99, 460 A.2d 951 (1983); *State* v. *Iasevoli,* 188 Conn. 325, 332–33, 449 A.2d 996 (1982). Inferentially, the court could find that the defendant in fact knew that he could have disarmed the victim and that the defendant was therefore unreasonable in believing that deadly force was necessary. Accordingly, his use of such deadly force was unjustified.

The difficulty with the state's reply is that the trial court did not make the precise finding upon which the state would have us rely. The court found that the defendant could have disarmed the victim without expressly finding that the defendant knew or believed he could have done so.

We need not decide how to resolve this difficulty because the court was explicit in its alternate finding with regard to the applicability of the defense of self-defense. Under § 53a-19 (b), the use of deadly force that might otherwise have been justifiable is not warranted if someone "knows that he can avoid the necessity of

using such force with complete safety . . . by retreating . . . ." The trial court expressly found that the defendant in this case "knew he could retreat with complete safety." The court based this finding on the defendant's familiarity with his sister's apartment, which he had frequently visited, and on the defendant's position, at the time of the shooting, near the doorway to an adjacent room. Despite the defendant's claims to the contrary, these were findings that the trial court could appropriately make to sustain its conclusion that the state had met its burden of proof with respect to justification as a matter of self-defense. *State* v. *Braxton,* 196 Conn. 685, 691–92, 495 A.2d 273 (1985); *State* v. *Martin,* 195 Conn. 166, 173–74, 487 A.2d 177 (1985).[5]

## II

Justification for the use of deadly force may also be found in the provisions of § 53a-20 dealing with defense of premises. The defendant in this case relied on that portion of § 53a-20 which permits the use of deadly force by a person who is privileged to be on the premises and who "reasonably believes [such force] is necessary to prevent an attempt by the [criminal] trespasser to commit arson or any crime of violence . . . ." In order for this section to apply in this case, the defendant would have had to be privileged to be on the premises, and the trial court so found. In addition, the victim Sharp would have had to be a criminal trespasser. The court concluded, to the contrary, that the victim was not on the premises as a criminal trespasser.

[5] The defendant also argues that, had he retreated, he might have jeopardized the safety of other occupants of the apartment. As the state correctly points out, this argument comes too late, having never been raised before the trial court or in the defendant's original appeal brief in this court. In any event, the defendant has pointed to no evidence that the victim posed a threat to others in the apartment.

The court's conclusion that the victim was not a criminal trespasser was based upon its factual findings about the nature of the relationship between the victim and the defendant's sister. Noting that the victim and the defendant's sister had lived together in her apartment on and off for approximately four years, the court found that their relationship had been marked by a long history of periodic quarrels and reunions: "That the decedent's visit was to be reinstated or to remove his belongings was standard procedure." After breaking up a heated argument between his sister and the victim, the defendant himself asked the victim to leave and come back another time. In light of these circumstances, the court concluded that the victim's conduct did not constitute criminal trespass, which requires, at a minimum, that a person enter or remain on the premises of another person, "knowing that he is not licensed or privileged to do so." General Statutes §§ 53a-107, 53a-108, 53a-109.[6]

---

[6] "[General Statutes] Sec. 53a-107. CRIMINAL TRESPASS IN THE FIRST DEGREE: CLASS A MISDEMEANOR. (a) A person is guilty of criminal trespass in the first degree when: (1) Knowing that he is not licensed or privileged to do so, such person enters or remains in a building or any other premises after an order to leave or not to enter personally communicated to such person by the owner of the premises or other authorized person; or (2) such person enters or remains in a building or any other premises in violation of a restraining order issued by the superior court.

"(b) Criminal trespass in the first degree is a class A misdemeanor."

"[General Statutes] Sec. 53a-108. CRIMINAL TRESPASS IN THE SECOND DEGREE: CLASS B MISDEMEANOR. (a) A person is guilty of criminal trespass in the second degree when, knowing that he is not licensed or privileged to do so, he enters or remains in a building.

"(b) Criminal trespass in the second degree is a class B misdemeanor."

"[General Statutes] Sec. 53a-109. CRIMINAL TRESPASS IN THE THIRD DEGREE: CLASS C MISDEMEANOR. (a) A person is guilty of criminal trespass in the third degree when (1) knowing that he is not licensed or privileged to do so, he enters or remains in premises which are posted in a manner prescribed by law or reasonably likely to come to the attention of intruders, or fenced or otherwise enclosed in a manner designed to exclude intruders, or which belong to the state and are appurtenant to any state institution; or (2) knowing that he is not licensed or privileged to do so, he enters or remains in any premises for the purpose of hunting, trapping or fishing.

"(b) Criminal trespass in the third degree is a class C misdemeanor."

The defendant maintains that this conclusion is in error because, despite the couple's protracted and stormy relationship, the defendant's sister had the legal right to protect herself and her apartment from the violence threatened by the victim. *Thurman* v. *Torrington,* 595 F. Sup. 1521, 1528 (D. Conn. 1984). That right does not come into issue, however, unless it is exercised in some manifest fashion. As the defendant acknowledges in his brief, the trial court apparently decided that the defendant's sister had "cried wolf" too often in the past to give credibility to her actions on the day in question. The court did not find that, because of the history of the couple's relationship, she lacked the authority to change it for the future. Instead, the court found that, in view of this history and her own intoxication, her order to the victim to leave was simply a part of the couple's ongoing relationship.

The actor's knowledge that he is not privileged or licensed to enter or to remain on the premises is a requirement of criminal trespass. *State* v. *Martin,* 35 Conn. Sup. 555, 563–64, 398 A.2d 1197 (1978); 2 Model Penal Code and Commentaries (1980) § 221.2, comment 2 (a). Bearing in mind this requirement of scienter, we conclude that the trial court's determination that the victim was not a criminal trespasser finds support in the subordinate facts that it found.

There is no error.

In this opinion the other justices concurred.