BIRD ELECTRON BEAM CORPORATION *v.*
DAVID GAMAGE
(4908)

DUPONT, C. J., BORDEN and DALY, Js.

Submitted on briefs March 2—decision released May 26, 1987

*Louis R. Pepe* filed a brief for the appellant (plaintiff).

*Bruce D. Tyler* filed a brief for the appellee (defendant).

DUPONT, C. J. The issues of this appeal revolve about a "Non-Disclosure Agreement" of the parties which provided that for a period of two years after the termination of the defendant's employment with the plaintiff, he would not render services to any "conflicting organization" within a certain geographical area and would not disclose "confidential information."[1] The

---

[1] The pertinent provisions of the agreement are as follows:

"1.b. 'Confidential Information' means information disclosed to the Employee or known by the Employee as a consequence of or through his employment by the Company, not generally known in the industry in which the Company is or may become engaged, about Company's products, processes, and services, or the products, processes and services of Company's customers, including, but not limited to, information relating to research, development, inventions, manufacture, purchasing, accounting, engineering, marketing, merchandising, and selling, whether, or not such information is included in a patent or trademark or copyright. . . .

"1.d. 'Conflicting organization' means any person or organization engaged in or about to become engaged in research on, or development, production, marketing or selling of a Conflicting Product.

"1.e. 'Conflicting Product' means any product, process, or service of any person or organization other than the Company, in existence or under development, which resembles or competes with a product, process, or service upon or with which the Employee works or has worked during the three (3) years prior to the termination of his employment with the Company or about which the Employee requires Confidential Information.

"1.f. 'Conflicting Organization' means any person or organization or any person or organization controlled by, controlling or under common control with such person or organization, who or which is engaged in, or is about to become engaged in, research on or development, production, marketing or selling of a Conflicting Product.

\* \* \*

"6. Except as required in the Employee's duties to the Company, he will never, directly or otherwise, use, disseminate, disclose, lecture upon or publish articles concerning any Confidential Information.

\* \* \*

"9. While he is employed by the Company, and for a period of two (2) years after termination of his employment with the Company, the Employee shall not render services, directly or indirectly, to any conflicting organization, having an office or place of business within Hartford County in the

defendant left his employment with the plaintiff and the plaintiff sought injunctive relief to enforce the agreement by preventing him from working for and from disclosing alleged confidential information to a second employer. The trial court concluded that the agreement was effective to preclude the defendant from working for another if he were engaged in disclosing confidential information, that the defendant was not disclosing or using confidential information of the plaintiff, and that the defendant had not breached the agreement. The court rendered judgment for the defendant and the plaintiff has appealed.

The plaintiff claims that the trial court erred (1) in concluding that the defendant is not disclosing or using confidential information in his new employment, (2) in failing to rule at all on its claim of law that the new employer was a "conflicting organization" within the terms of the agreement and that, therefore, the employment was per se a breach of the agreement, and (3) in admitting hearsay evidence.

The trial court, in a lengthy opinion, found a number of facts which it had carefully sifted from the evidence. The plaintiff corporation is a "job shop," a service business which makes electron beam welding applications to products manufactured by others; the plaintiff's customers include the present employer of the defendant; the plaintiff's welding schedules are confidential; the defendant had access to the plaintiff's welding schedules; the defendant is using the welding

state of Connecticut or in Hampden or Middlesex Counties in the Commonwealth of Massachusetts, except that the Employee may accept employment with a Conflicting Organization whose business is diversified, and which, as part of its business, is not a Conflicting Organization, provided however, that the Company, prior to the Employee accepting such employment, shall receive separate written assurances satisfactory to the Company from such Conflicting Organization and from the Employee that the Employee will not render services directly or indirectly in connection with any Conflicting Product."

schedules of his new employer in its in-house welding jobs; the new employer cannot successfully compete with job shops; the defendant is performing the techniques of his new employer and not the techniques of the plaintiff; the defendant is a production welder in his new job and does not work on jobs similar to that of the plaintiff.

From those facts, the court concluded that the defendant was not disclosing or using confidential information learned from the plaintiff in his new employment. This conclusion is supported by the facts found which were, in turn, based on the evidence presented. See *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980).

The plaintiff's major argument centers about his claim that the court did not specifically find whether the new employer of the defendant was a "conflicting organization." See footnote 1, supra. The plaintiff contends that since the court found the agreement to be enforceable, the failure to address the question of whether the defendant had breached the agreement by employment with a "conflicting organization" was reversible error, requiring a new trial. The plaintiff claims that if the second employer were a "conflicting organization," the defendant's employment would be, per se, a violation of the agreement even if he was not disclosing confidential information learned from his employment with the plaintiff. The alleged failure to rule on this issue is a failure, according to the plaintiff, to rule on each claim of law raised by it, a violation of Practice Book § 4059 (formerly § 3060B). The plaintiff argues that the consequence of a lack of a decision on its claim mandates reversal by this court of the trial court's judgment.

The plaintiff's argument assumes that the trial court did not rule on the defendant's claim that the present

employer is a "conflicting organization" and did not rule on whether the defendant had breached his agreement by virtue of his present employment. The plaintiff reads the trial court's memorandum as deciding only that the defendant had not breached his agreement by disclosing confidential information.

The court, in addressing the defendant's special defense that the agreement violated the Connecticut Anti-Trust Act; General Statutes §§ 35-24 through 35-45; concluded that the purpose of the agreement was the protection of the confidentiality of the plaintiff's welding schedules. As such, the court found that the agreement's restraint on subsequent employment for a particular time and within a particular area was not illegal per se. It further concluded that the defendant's new employment would have been a breach of the agreement if the defendant were disclosing confidential information. Thus, the court apparently viewed the provisions of the agreement relating to prohibitions against disclosure and against subsequent employment as being intertwined. In the plaintiff's view, however, the contractual prohibition against disclosure is independent of its claim that the defendant was per se prohibited from working for a "conflicting organization."

The plaintiff's latter claim was clearly raised by the plaintiff and was not specifically ruled on by the court. The court, however, may have impliedly found that the second employer was not a "conflicting organization"[2] since it found that the employer was not engaged in work similar to that of the plaintiff, that the defendant was not using techniques of the plaintiff, that the defendant was a production welder who did not work on jobs similar to those performed by the plaintiff and that the second employer could not successfully com-

[2] See footnote 1, supra, for the definitions of "conflicting organization" and "conflicting product."

pete with the plaintiff. On the basis of the court's apparent reading of the contract, namely that the provisions against disclosure and against subsequent employment were intertwined, the court may have, in effect, found facts sufficient to support a conclusion on the issue raised without, however, actually making the conclusion.

Practice Book § 4059 (formerly § 3060B) provides in pertinent part: "[T]he court shall . . . state its decision on the issues in the case . . . . The court shall include in its decision its conclusion as to each claim of law raised by the parties." The purpose of the section is to enable this court as well as the parties to understand the basis of a trial court's decision. *Rompe* v. *King,* 185 Conn. 426, 433 n.2, 441 A.2d 114 (1981). If the trial court fails to articulate that basis sufficiently, this court may remand the case for further articulation under Practice Book § 4051 (formerly § 3082).

The problem here is that even if it can be assumed that the memorandum of decision makes it clear that the court sub silentio ruled that the defendant was not working for a "conflicting organization," it remains unclear whether the court considered that conclusion irrelevant to its decision. The court stated as its final statement, before the rescript, "that the Non-Disclosure Agreement was effective to preclude the defendant from working for [the second employer] if the defendant had been engaged in disclosing confidential information of the plaintiff as alleged by the complaint." This statement might mean that as long as the defendant did not disclose confidential information he could work for a "conflicting organization" without breaching the agreement.

Even if it is assumed that the court, without specifically saying so, found that the second employer, was not a "conflicting organization," it also appears to have

concluded that the fact was irrelevant because there could be no breach of the agreement unless the defendant disclosed confidential information to that employer. The plaintiff's claim[3] is that, if the new employer were a "conflicting organization," the defendant breached his agreement. The court's decision on this claim was ambiguous. We deem it necessary, therefore, for a proper disposition of the cause, because of the ambiguity of the decision, to remand the case for an articulation by the trial court as to whether the defendant's present employer is a "conflicting organization" and how that fact, if found, impacts on its conclusion as to whether the defendant breached the agreement because of his new employment. See Practice Book § 4061 (formerly 3060D); *State* v. *Garrison,* 199 Conn. 383, 388, 507 A.2d 467 (1986); *Grunschlag* v. *Ethel Walker School, Inc.,* 189 Conn. 316, 320, 455 A.2d 1332 (1983); *Bencivenga* v. *Milford,* 183 Conn. 168, 176, 438 A.2d 1174 (1981).

The plaintiff also claims that the trial court erred in allowing into evidence a letter of the defendant's present employer to the defendant, stating that the employer had no intention of knowingly receiving the trade secrets of another. The court admitted the letter, not for the purpose of showing the truth of its allegations, but to indicate that the defendant acknowledged that to be the policy of his new employer. The plaintiff argues that, although the court stated its reasons for the introduction as being outside the hearsay

---

[3] Although the plaintiff has characterized its claim regarding the meaning of the contract as a claim of law, it is more properly viewed as a question of fact. In the absence of definitive contract language, the determination " 'of what the parties intended to encompass in their contractual commitments' " is a question of fact. *Finley* v. *Aetna Life & Casualty Co.,* 202 Conn. 190, 199, 520 A.2d 208 (1987); see also *Bowman* v. *1477 Central Avenue Apartments, Inc.,* 203 Conn. 246, 257, 524 A.2d 610 (1987); *Bolmer* v. *Kocet,* 6 Conn. App. 595, 608, 507 A.2d 129 (1986).

rule, it, in fact, relied on the letter for the truth of its contents in its memorandum of decision. The court did use the letter beyond the purpose recited. It used the exhibit to find that the present employer "has a firm policy against raiding employees from other companies." Although the use of the letter for the truth of that fact was error, the error was harmless. The issues of this case were whether the agreement of the parties was enforceable and whether the defendant had violated the agreement either by disclosing confidential information to another employer or by working for the other employer. The policy of the second employer was not relevant to the basic issues.

The case is remanded to the trial court with direction to file a memorandum of decision in further articulation in accordance with this opinion.

In this opinion the other judges concurred.