******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

BISHOP, J., dissenting. As noted by the majority, the operative complaint in this matter, filed on August 12, 2015, contains six counts, including one count alleging intentional assault and battery.[1] Following trial, the jury determined, as revealed by answers to interrogatories propounded to them, that the defendant, Gregory Mesniaeff, had, in fact, intentionally assaulted the plaintiff, Elizabeth Burke, and that his assault caused injuries and damages to her. The jury, however, found that the defendant had proven his special defense of justification and that he had acted in defense of others. Accordingly, the jury found in favor of the defendant. On appeal, the plaintiff makes two principal arguments: that the court inappropriately instructed the jury on the law of criminal trespass and that the evidence was insufficient to sustain the jury's determination that the defendant's wilful assault against the plaintiff was justified under the theory that he was acting in defense of others. While the majority acknowledges the possibility of some infirmity in the court's trespass instruction, my colleagues conclude that any such imperfection had no bearing on the judgment. Additionally, the majority has concluded that the evidence supports the jury's determination that the defendant was acting in defense of others. I respectfully disagree. In my view, the concept of the plaintiff as a trespasser in a marital residence of the parties had no place in the trial proceedings.[2] That wrong minded notion, however, coursed throughout the evidentiary portion of the trial and was prominent in the court's instructions to the jury as well as in defense counsel's closing argument, likely confusing the jury and, as a result, rendering its verdict unreliable.

Additionally, I part company with my colleagues regarding their conclusion that the evidence was sufficient to warrant the jury's determination that the defendant's need to protect others on the property justified his wilful assault upon the plaintiff. To the contrary, I believe the record is devoid of any objective evidence from which the defendant reasonably could have concluded that others present at the residence were under threat of harm from the plaintiff while he was engaged in his physical assault upon her. Accordingly, I respectfully dissent.

In this dissenting opinion, I first discuss the court's instructions on trespass; next, I discuss the adequacy of the evidence supporting the special defense relating to the defense of others.

At the outset, I note that the majority characterizes the plaintiff's instructional claims on appeal as relating only to the court's charge on two of the defendant's special defenses and concludes that because the jury did not find that the plaintiff was a trespasser, her

claim was unavailing. I do not so narrowly construe the plaintiff's claims; rather, I understand that the plaintiff has asserted on appeal that the court should not have given any instruction on trespassing. Also, I do not share the majority's conclusion regarding the harmlessness of the court's jury instruction on the basis, as the majority claims, that the jury did not conclude that the plaintiff had been trespassing while under assault by the defendant. Indeed, I believe, respectfully, that the court's instruction on trespassing essentially concluded for the jury that the plaintiff was trespassing when, as an uninvited guest in her husband's home, she refused to leave when told to do so.

A fair analysis of the pleadings, evidence, and oral argument leads me to conclude that the plaintiff's status as an alleged trespasser at the time and place of the incident was bedrock to the defense of this civil assault and battery claim. The following supports this conclusion

During pretrial proceedings, the defendant filed several special defenses premised on the notion that his assault against the plaintiff was justified as self-defense, defense of others, or defense of property. All of these special defenses, as alleged by the defendant, were premised on the claim that the plaintiff was trespassing on the defendant's property at the time of the incident.[3] In sum, the defendant's claim that the plaintiff was a trespasser when he assaulted her was key to his defense. My conclusion in this regard is further buttressed by reference to the closing argument of the defendant's counsel and to the court's instructions to the jury.

In closing argument, after the evidentiary portion of the trial during which there was considerable, albeit disputed, evidence regarding the plaintiff's status while at the Sharon house, the defendant's counsel stated, in part: "She claimed at one point that she resides or resided at the Sharon house, that it was her house. The marital house is down in New Rochelle. This is complete fabrication. [The defendant] said she lived there two weeks a long time ago. That was it. It's not her—not her home, not her residence, never was. There's . . . uncontradicted testimony that [the defendant] is the sole owner of the property. It is his house." Later, the defendant's counsel returned to this theme when he claimed to the jury: "No one disputes that [the plaintiff] was told to leave the property. That's an important point. She was told she's got to leave the property. [The plaintiff] said she was told. She told that in—put that in the police report. She refused to leave the property. At that point, she was no longer a welcomed guest at the house. You'll see in our special defenses the legal language that the judge will tell you you need to follow. There's reasons why the laws are written the way they are. And for situations like this, there are laws that

apply and you're gonna get those instructions. And you have to decide essentially did [the defendant] handle himself properly that day? Did he act reasonably? Did he not use excessive force to remove her from the property? I think the testimony and the evidence is that he used as much force as he had to use to keep her from getting back into the property. That was a reasonable thing for him to do by any standard."

True to the defendant's counsel's predictions, the court provided the jury with extensive instructions regarding the role of trespassing in the defendant's defenses. Respectfully, from my perspective, the court essentially told the jury that the plaintiff had been a trespasser. In part, the court commented to the jury: "The defendant alleges that on December 5, 2009, the plaintiff was trespassing on the premises and exhibiting disorderly conduct and/or creating a disturbance. The parties agree that the defendant did not invite the plaintiff to the historic tour. In addition, the defendant alleges the plaintiff entered and/or remained on the property after she was directed to leave by him, the owner of the property, and that she refused to do so, among the other claims asserted with respect to trespassing. The plaintiff does not dispute that she was told to leave."

I agree with the majority's observation, albeit in a different legal context, that jurors are not required to leave their common sense at the courthouse door. In this instance, and in the absence of any charge to the jury regarding the plaintiff's entitlement to occupy the premises no matter which spouse held title, I believe, respectfully, that any reasonable juror would have concluded from this charge that the plaintiff's status as a trespasser during the incident in question was a foregone conclusion.[4]

The court's instructions regarding the special defenses continued the theme of the plaintiff as a trespasser. As to the special defense of justification, the court instructed the jury as follows: "[A] person in possession or control of premises is justified in using reasonable physical force upon another person when and to the extent that he reasonably believes such to be necessary to prevent or terminate the commission or attempted commission of a criminal trespass by such other person in or upon such premises." Thus, it is apparent that the notion of the plaintiff as a trespasser was central to the court's charge on the successful defense of justification. Justification, however, is not a stand-alone defense. As a matter of logic and law, the defense of justification must relate to some behavior which is alleged to have been justified. Here, the jury found that the defendant's assaultive behavior was justified and that justification was premised, as instructed by the court, on the notion of the plaintiff as a trespasser on the defendant's property. In short, assuming the jury followed the court's justification charge, the one

reasonable conclusion supported by the record is that the defendant was justified in assaulting the plaintiff as a means to eject her from the property titled only in his name and after she had refused to leave when told to do so. Thus, even though the court did not reiterate its instructions concerning trespassing when discussing the special defense relating to the defense of others, the instruction regarding the plaintiff as trespasser in the more general defense of justification cannot fairly be excised from our consideration of the viability of the jury's verdict.

As noted by the majority, at the conclusion of the evidence portion of the trial, the court submitted interrogatories to the jury, including those dealing with each of the defendant's special defenses. The jury's responses to two interrogatories were determinative of the plaintiff's claims. As reflected by their answers to the interrogatories, the jury found that the defendant's conduct toward the plaintiff constituted intentional assault and battery and that his intentional conduct was a substantial factor in causing or aggravating the plaintiff's injuries and damages. The jury found, however, in favor of the defendant on two of his special defenses. Specifically, the jury determined that the doctrines of justification and defense of others barred the plaintiff's recovery.

In determining that the court's instruction on trespass was not harmful to the plaintiff, the majority fastens on the jury's response to the interrogatory related to the plaintiff's special defense regarding wrongful conduct by the plaintiff. The majority concludes that because the jury did not find that the plaintiff's wrongful conduct barred her recovery, the jury must have concluded that the plaintiff was not trespassing when she was assaulted by the defendant. As noted, I do not believe this conclusion is warranted by the record. With respect to the special defense regarding the plaintiff's alleged wrongful conduct, the court instructed the jury as follows: "The defendant has also raised the defense of 'wrongful conduct,' claiming that the plaintiff is barred, in whole or in part, from pursuing her claims under the doctrine of wrongful conduct. The defendant alleges that on December 5, 2009, the plaintiff was trespassing on the premises and exhibiting disorderly conduct and/or creating a disturbance. The parties agree that the defendant did not invite the plaintiff to the historic tour. In addition, the defendant alleges the plaintiff entered and/or remained on the property after she was directed to leave by him, the owner of the property, and that she refused to do so, among the other claims asserted with respect to trespassing. The plaintiff does not dispute that she was told to leave. The defendant also alleges the plaintiff was exhibiting disorderly conduct and/or creating a public disturbance. The defendant also alleges that the plaintiff was assaulting and/or battering him during the incident of

December 5, 2009. Under Connecticut law, a plaintiff may not maintain a civil action for injuries allegedly sustained as the direct result of her knowing and intentional participation in a criminal act. The wrongful conduct defense does not apply if you find that the plaintiff sustained injuries and damages independent of any wrongful conduct of the plaintiff. It further applies only if the plaintiff has violated the law in connection with the very transaction as to which she seeks redress or relief." Thus, the court's reference to wrongful conduct related to the defendant's claim that the plaintiff had been trespassing but also that she had been guilty of disorderly conduct and creating a public disturbance. Significantly, the court's charge in this regard included a component ignored by the majority that there must be a nexus between the plaintiff's alleged wrongful conduct and the assault for this special defense to prevail. Thus, because the jury found that the defendant wilfully assaulted the plaintiff, it is entirely reasonable to deduce, from this interrogatory, that irrespective of whether the plaintiff was guilty of trespassing or disorderly conduct, the defendant's assault upon her was not sufficiently tied to her criminal conduct for this special defense to prevail.

Accordingly, I do not believe it is reasonable to glean from the jury's answer to the wrongful conduct interrogatory that the jury found that the plaintiff had not been trespassing when she was being assaulted by the defendant. Such a finding is neither compelled nor warranted by the jury's rejection of this special defense.

In sum, from my reading of the court's instructions and the jury's responses to interrogatories, it is reasonable to conclude as an overarching consideration, that the jury was influenced by the court's instruction on trespass and found that the plaintiff could not recover because, as a trespasser, she was susceptible to the defendant's claims regarding justification and the defense of others.[5]

I am troubled by this outcome for two principal reasons. As noted, I do not believe it was appropriate for the court, under these circumstances, to give the jury any instruction premised on the plaintiff being a trespasser. Secondly, even if the court could reasonably have given an instruction on criminal trespass, the court gave an incomplete and flawed trespass instruction by failing to further instruct the jury on the scienter element of trespass and on the question of whether the plaintiff, as a nontitleholder, was nevertheless privileged to be on the property in light of her marriage to the defendant and the status of the Sharon house as a periodically shared marital residence.

In giving its instruction, the court followed the language of the criminal trespass statute, General Statutes § 53a-107 (a) (1), which states that a person commits criminal trespass when "[k]nowing that such person is

not licensed or privileged to do so, such person enters or remains in a building or any other premises after an order to leave or not to enter personally communicated to such person by the owner of the premises . . . ." As I read that statute, it contains multiple parts, each necessary to the conclusion that one is a trespasser. In order to make such a determination, a fact finder would have to conclude (1) that a person knows he or she is not licensed to be on property, (2) that the person must, in fact, not be so licensed or privileged, (3) that the person must be ordered to leave by the owner, and (4) that the person must refuse such an order. In the present case, the court gave no guidance to the jury as to the meaning of the statute's prefatory language concerning whether a person is licensed or privileged to be on property owned by another. And, as noted, the court did not instruct the jury on the trespass statute's scienter requirement of proof that the nonowner must know that he or she is not licensed or privileged to be on the property in order to be guilty of trespassing. See *State v. Garrison*, 203 Conn. 466, 474, 525 A.2d 498 (1987) ("[t]he actor's knowledge that he is not privileged or licensed to enter or to remain on the premises is a requirement of criminal trespass"). And yet, whether the plaintiff was privileged or licensed to be on the property and, if not, whether she knew so, are factors at the crux of the question of whether the plaintiff could be considered to have been trespassing under the then existing circumstances.[6] Rather than provide an explanation of the meaning of these terms, the court dwelled, instead, on the fact that the property was owned by the defendant who had told the plaintiff to leave. The jury was, therefore, left with an incomplete understanding of how one can be found to be a trespasser.

Here, there was no evidence that the plaintiff trespassed on the property. To the contrary, there was considerable undisputed evidence that she was licensed and privileged to be there. The record reflects that the parties were married in 1989 and that approximately ten years later, the defendant purchased the subject property in Sharon and took title in his own name. After the Sharon house was bought, the parties purchased a home in New Rochelle, New York, which became their primary residence.

The record supports the conclusion that, at the time of this incident, the parties were married and living together. During testimony, the defendant acknowledged that the plaintiff had a key to the Sharon house, that she had a right to be on the property, and that she kept clothing, furniture, furnishings, and kitchenware on the premises, which she retrieved from the premises after the incident. Laurel Powers, a friend of the plaintiff, also testified that the plaintiff kept clothing, furnishings, and other personal belongings in the Sharon house, which she assisted the plaintiff in retrieving after the incident. Moreover, the plaintiff testified, without con-

tradiction, that after the Sharon house was purchased, she selected the interior color scheme and painted the interior of the home. Also, although the defendant disputed the amount of time that the plaintiff had stayed in the Sharon house, he did not deny that she sometimes had occupied the home with him during the marriage.

Importantly, the defendant acknowledged, at trial, that on the date of the assault, he believed that the plaintiff had the right to be at the property because they were married and he did not perceive her as trespassing either when she first arrived or after he told her to leave.[7]

Finally, it is noteworthy that both parties had Connecticut driver's licenses at the time of this incident. Because there was no trial evidence of any other Connecticut dwellings of the parties, this fact provides some indication that each considered the Sharon house to be a place of his and her residence.

On the basis of these facts, I do not believe there was any basis for the court to instruct the jury on the law of criminal trespass. In doing so, the court dwelled only on the fact that the property had been titled in the defendant's name and that, as the titleholder, he, at some point, told the plaintiff to leave and she refused. Because I believe this partial and incomplete instruction infected the jury's deliberations, the jury's verdict lacks reliability.

My point is best illustrated by the use of an example. Consider the following. John Jones and Mary Jones are married and reside in a home titled solely in John's name. On a Sunday afternoon, John announces to Mary that he has invited several of his male friends to come to the house to watch a sports event on afternoon television. Mary, however, does not like John's friends and detests watching sports. On hearing John's intentions, she strongly voices her displeasure and tells John that his friends are not welcome. She then leaves the residence on an errand. Later when she returns, and upon seeing John's friends at the home, she loudly tells them that they are not welcome and orders them to leave. At that juncture, John reminds Mary that the house is in his own name and tells her to vacate. When she refuses, John calls the police and insists that Mary be arrested for criminal trespass for her refusal to leave the premises when ordered to do so by him. Under these circumstances, I do not believe a serious argument can be advanced that Mary has committed a trespass solely on the basis that John owns the property because, notwithstanding title ownership, Mary is licensed and privileged to be in the marital residence.

To me, the facts of the example are parallel to the circumstances we confront in this appeal, except for a legally insignificant disagreement between the parties as to how much time the plaintiff actually spent in the

Sharon house during the marriage leading up to the defendant's assault on the plaintiff. I believe the actual amount of time each party spent at the Sharon house is unimportant because both parties understood the Sharon house to be a marital residence. In sum, the defendant's characterization of the Sharon house as a family residence and his own state of mind that the plaintiff was not a trespasser on the date of the incident should put to rest any notion of the plaintiff as a trespasser. The jury, however, was led to believe from the instructions that ownership was the pivot point for trespass and that the plaintiff's status as a trespasser could justify the defendant's assaultive behavior toward her. The jury was given no instruction concerning the facts and circumstances that could give rise to a nontitleholder's license or privilege to be present. In the absence of that explanation, in this case and beyond, a spouse without title to a marital residence dwells there only at the sufferance of the owner of title spouse, a circumstance ripe for abuse and one that cannot be harmonized with any reasonable public policy.

The plaintiff claims, as well, that there was insufficient evidence to support the jury's determination that, in assaulting the plaintiff, the defendant properly acted in defense of others. I agree.

"The defense of others, like self-defense, is a justification defense . . . [which] operate[s] to exempt from punishment otherwise criminal conduct when the harm from such conduct is deemed to be outweighed by the need to avoid an even greater harm or to further a greater societal interest . . . . Thus, conduct that is found to be justified is, under the circumstances, not criminal." (Internal quotation marks omitted.) *State* v. *Bryan*, 307 Conn. 823, 832–33, 60 A.3d 246 (2013). Furthermore, "in order to submit a defense of others defense to the jury, a defendant must introduce evidence that the defendant reasonably believed [the attacker's] unlawful violence to be imminent or immediate." (Internal quotation marks omitted.) Id., 835. The notion of a reasonable belief has two components: first, the actor must have an actual belief of an imminent danger to others and, second, that belief must be reasonable. Thus, in assessing a defense of others claim, we utilize what has come to be known as a subjective-objective test. See id., 836; *State* v. *DeJesus*, 194 Conn. 376, 389 n.13, 481 A.2d 1277 (1984); *State* v. *Croom*, 166 Conn. 226, 229–30, 348 A.2d 556 (1974). That is, the actor must believe that the danger is actual and imminent and the actor's belief must be reasonable by an objective standard.

In this appeal, the relevant evidence from the record is that when the plaintiff approached the Sharon house, the defendant was inside the residence with three women who were guests on an historic house tour. The evidence supports the conclusion that when the plaintiff

arrived on the porch, she yelled out in questioning who the women were and that the defendant immediately went to the plaintiff, grabbed her by the arm, and forcibly led her away from the house while she continued to loudly demand to know the identities of the women in the house, while also screaming, "Help, help! Call the police." The evidence further reveals that once the defendant had brought the plaintiff close to the road, the plaintiff was either thrown or fell into a snow bank in such a manner that Pierce Kearney, a stranger who was then driving by the property, stopped, exited his vehicle, and ran across the road in an effort to stop the defendant from behavior he thought was assaultive. The defendant assured him that the situation was all right with the statement: "It's okay, she's my wife," to which Kearney responded, "No, this is over." Finally, the record reveals that the women who had remained inside the house were upset and fearful, one testifying that she did not know if the plaintiff might have been armed with a weapon.

In finding this evidence sufficient to support the jury's determination that the defendant acted reasonably in defense of others, the majority appears to rely on the testimony of the tour guests, concluding that their fears were objectively reasonable. Respectfully, I believe this analysis is wide of the mark. The extent of fear and hysteria of the defendant's house tour guests is, in no way, a measure of the reasonableness of the defendant's assaultive behavior. In other words, the issue at hand is not the reaction of the houseguests or the reasonableness of their fears; rather, it is the objective reasonableness of the defendant's claimed belief that the houseguests were in imminent danger of physical harm from the plaintiff.[8] And, in this regard, the record is bereft of any evidence that, at any time, the plaintiff, by gesture or words, made any threats against the houseguests. Time and time again during the trial, the defendant was given the opportunity to state the objective basis for a reasonable belief that the houseguests were at risk of physical harm and, time and time again, he could offer no evidence except for his subjective belief that his guests were in peril from the plaintiff.[9] As noted, the defendant's belief, alone, that others might be in harm's way is insufficient, as a matter of law, to justify his assault upon the plaintiff. Furthermore, the defendant's own admissions at trial put the denial to his defense of others special defense.[10] Accordingly, I believe, that as a matter of law, the evidence was insufficient to warrant a verdict based on the defendant's special defense that he was acting in defense of others when he wilfully assaulted the plaintiff.

For the reasons stated, I would reverse and remand for retrial. Accordingly, I respectfully dissent.

[1] The record reveals that the complaint in this matter was initially filed on January 3, 2012.

[2] While the plaintiff framed her claim of rightful access to the Sharon house as a spouse's right to marital property, she makes it clear in her

briefing that her claim relates more broadly to the notion that the evidence amply demonstrated that the Sharon house was a residence purchased and periodically shared by the parties during the marriage and, thus, a property she was entitled to occupy during the marriage.

[3] The relevant special defenses are as follows:

"Fourth Special Defense: Wrongful Conduct

"The plaintiff is barred, in whole or in part, from pursuing her claims under the doctrine of wrongful conduct. On December 5, 2009, the plaintiff was trespassing on the premises. The plaintiff exhibited disorderly conduct and/or was creating a public disturbance. In addition, the plaintiff was assaulting and/or battering the defendant. The plaintiff's actions on December 5, 2009, were made knowingly and intentionally. . . .

"Seventh Special Defense: Self-Defense

"With respect to the allegations of December 5, 2009, any actions taken by the defendant were in self-defense. The plaintiff was trespassing at the time of the incident and was assaulting and/or battering the defendant.

"Eighth Special Defense: Defense of others

"With respect to the allegations of December 5, 2009, any actions taken by the defendant were in defense of others. The plaintiff was trespassing at the time of the incident and was acting in a disorderly manner.

"Ninth Special Defense: Justification

"At the time of the incident, the plaintiff was trespassing on the defendant's property. The plaintiff, knowing that she was not licensed or privileged to do so, entered and remained on the property. Despite the defendant, who is the owner of the property, directing her to leave, the plaintiff refused to do so. The plaintiff then continued to exhibit disorderly conduct and/or create a public disturbance. As such, the defendant was justified in using reasonable force in escorting the plaintiff from the premises."

[4] The majority notes that the court did not instruct the jury that the defendant had to prove that the plaintiff was trespassing at the Sharon house. Given the court's marshaling of evidence in this regard and the absence of any countervailing instruction on whether the plaintiff was nonetheless entitled to be on the property, the court may have considered such a question to be unnecessary and that the only worthy questions for the jury regarding the special defenses concerned whether the defendant's conduct in forcibly removing the uninvited plaintiff from his property was proportional to the risk her presence and demeanor created to him, the property, or to others.

[5] Although the court's instructions on the special defense of defense of others was minimal, I am mindful that the defendant tied this special defense, as he did all of his special defenses, to the notion that, at the time of the incident, the plaintiff had been trespassing. See footnote 3 of this dissenting opinion.

[6] In this regard, the fact that the plaintiff parked her car away from the main driveway to the house and may have approached the house from the rear does not bear on the question of her license or privilege to be on the property. Neither does the suggestion that she may have known that the defendant did not want her to come to the house that afternoon. A contrary determination would be tantamount to saying that every time a couple's marital residence is titled in one partner's name, the other partner may come to or remain on the premise only at the whim of the title holding spouse. Such a conclusion would defy common sense and finds no support in public policy regarding marital relations.

[7] The defendant's notion, newly minted for this case, that the plaintiff was a trespasser on the date of this event can fairly be attributed to the wisdom gained with the passage of time and the ingenuity of counsel in formulating a defense to this intentional assault. The record belies the defendant's present posture that the plaintiff could reasonably have been characterized as a trespasser at the Sharon house on the date of the assault. This conclusion is buttressed by a review of the pleadings in the parties' marital dissolution action filed by the defendant on March 18, 2010, approximately three months after the assault, and approximately two years before this action was commenced. These pleadings contain averments and admissions by the present defendant that contradict the notion of the plaintiff as a trespasser. See *Mesniaeff* v. *Burke*, Superior Court, judicial district of Stamford-Norwalk, Docket No. FA-10-4021756-S (April 17, 2014). At the outset, I note that we may take judicial notice of court files between the same parties. See *In re Jeisean M.*, 270 Conn. 382, 402–403, 852 A.2d 643 (2004); *Carpenter* v. *Planning & Zoning Commission*, 176 Conn. 581, 591, 409 A.2d 1029 (1979); *Guerriero* v. *Galasso*, 144 Conn. 600, 605, 136 A.2d 497 (1957). In the dissolu-

tion matter, the defendant herein filed a motion on March 18, 2010, for exclusive possession of the Sharon house in which he averred:

"1. The plaintiff is presently living at the family residence located at 129/135 North Main Street, Sharon, Connecticut.

"2. The defendant has vacated the family residence located at 129/135 North Main Street, Sharon, Connecticut.

"3. There are no children of the parties who reside in the family home with the plaintiff.

"Wherefore, the plaintiff prays the court for an order pursuant to Connecticut General Statutes § 46b-83 prohibiting the defendant from reentering the premises at 129/135 North Main Street, Sharon, Connecticut during the pendency of this action or until a further order of the court."

The defendant's characterization of the Sharon house as a family residence in the marital dissolution action belies the notion that the plaintiff could, just three months earlier, have been considered by him to be trespassing on the property subject to his order to leave. The record of the marital dissolution action reveals that the defendant filed two identically worded motions on June 20, 2010, and December 7, 2010. Later, on October 11, 2012, however, after the present action was filed on January 3, 2012, the defendant herein recast, in the dissolution action, his motion for exclusive possession of the Sharon house, in which he newly referred to the property as his residence and averred that his spouse lived in New York. It does not appear from the record that any action was ever taken on any of these motions. That history rebuts any claim, by the defendant herein, that he considered the plaintiff to be a trespasser at the marital residence in Sharon on December 5, 2009.

[8] By way of illustration of this point, consider this different scenario: While a defendant is dragging a plaintiff along a driveway and while there are houseguests inside a nearby home, the plaintiff tells the defendant in a low but menacing voice that she has a handgun in her purse and she intends, as she struggles to get free, to go into the house to open fire on the women inside. In this scenario, none of the houseguests hear the plaintiff's lethal threat. Their absence of fear would be irrelevant to a consideration as to whether the defendant's assaultive behavior against the plaintiff could be justified as a reasonable reaction to the need to protect others.

[9] When given the opportunity to state any objective basis for his subjective belief that his houseguests were in threat of imminent harm from the plaintiff, this exchange took place between the plaintiff's counsel and the defendant:

"Q. And [the plaintiff] never threatened to physically harm any of those three women, isn't that true?

"A. No, that's not true.

"Q. Did she ever verbally say that she was going to hurt any of those women?

"A. I interpreted it that way. There was no direct statement to that effect that I can recall, but I certainly got that impression.

"Q. Did she say she was going to hurt anyone?

"A. I don't recall any such statements.

"Q. Did you ever say that she never threatened them verbally?

"A. I believe I may have."

Later, during the same cross-examination, this exchange took place:

"Q. And, [the plaintiff] never threatened to hurt anyone, she never said she was going to hurt you, isn't that true?"

"A. I believe that's true, yes."

It is noteworthy that the defendant did testify that in addition to his fears about the plaintiff's conduct, he was embarrassed by her behavior as well. Pride, however, is no justification for violence.

[10] During an exchange with the plaintiff's counsel regarding the defendant's forcibly leading the plaintiff down the driveway, the following colloquy took place:

"Q. Okay. She was struggling with you to try to get free; is that correct?

"A. I wouldn't put it that way, but just—there was active resistance on her part.

"Q. Is active—there's resistance, defined by you, as struggling to get free?

"A. It coulda been. It doesn't have to, though, sir.

"Q. Well, I'm asking about on December 5, 2009. Did [the plaintiff's] active resistance consist of struggling to get away from you?

"A. I don't believe it did, no."

This admission by the defendant puts to lie his legal claim that his assault was justified as a means of protecting his houseguests from harm. If, as he acknowledged, the plaintiff was not trying to escape from his grasp, she

could not have, by any reasonable perspective, have presented any risk of harm to others.

————————————————————