STATE OF CONNECTICUT *v.* FELIX COBBS
(11487)

PETERS, C. J., HEALEY, DANNEHY, SANTANIELLO and CALLAHAN, Js.

Argued January 7—decision released February 18, 1986

*Bruce L. Levin,* special public defender, with whom, on the brief, was *Lauren M. Weisfeld,* special public defender, for the appellant (defendant).

---

*Susann E. Gill,* deputy assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *Richard A. Schatz,* assistant state's attorney, for the appellee (state).

PER CURIAM. The defendant, Felix Cobbs, was convicted, after a trial to a three judge court, of felony murder in violation of General Statutes § 53a-54c.[1] In his appeal, the defendant has challenged the sufficiency of the evidence against him, the effectiveness of his legal representation at trial, and the failure of the state to disclose potentially exculpatory information.

The trial court's unanimous judgment holding the defendant guilty of the crime charged was rendered on August 21, 1981, and was accompanied by a memorandum of decision containing certain findings of fact. The trial court denied the defendant's motions for acquittal and for correction of the finding of facts. Thereafter, in response to an amended motion for a new trial, the court opened its judgment to hear additional testimony favorable to the defendant. After hearing and deliberation, the court affirmed its August 21, 1981 decision and found the defendant guilty as charged.

---

[1] General Statutes § 53a-54c provides: "Sec. 53a-54c. FELONY MURDER. A person is guilty of murder when, acting either alone or with one or more persons, he commits or attempts to commit robbery, burglary, kidnapping, sexual assault in the first degree, sexual assault in the first degree with a firearm, sexual assault in the third degree, sexual assault in the third degree with a firearm, escape in the first degree, or escape in the second degree and, in the course of and in furtherance of such crime or of flight therefrom, he, or another participant, if any, causes the death of a person other than one of the participants, except that in any prosecution under this section, in which the defendant was not the only participant in the underlying crime, it shall be an affirmative defense that the defendant: (A) Did not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof; and (B) was not armed with a deadly weapon, or any dangerous instrument; and (C) had no reasonable ground to believe that any other participant was armed with such a weapon or instrument; and (D) had no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury."

In assessing the defendant's claim that the evidence against him was insufficient to establish his guilt of felony murder, we must look to the trial court's findings of fact. The court found that three men, including the defendant, on or about midnight on the evening of June 14 or during the early hours of the morning of June 15, 1980, forcibly dragged Nestor Rodriguez, the victim, to the rear yard of a pool hall located at 98 Barbour Street in Hartford. The victim had previously been observed with a foot long knife protruding from his rear waistband. Officer Leo Shoupron of the Hartford police department, in response to information provided by neighborhood onlookers, conducted a twenty-five minute search of the area at about 12:20 a.m. The site was poorly illuminated, covered with undergrowth, junk cars and litter, and he found nothing. Returning to the scene a short time later, he sought additional police assistance to continue the search. At 2:21 a.m., Officer Gary Dumas and another policeman found the body of the victim in the front yard of a house about one hundred yards from 98 Barbour Street.

The trial court, in its memorandum of decision, stated that when the victim was found, he "had been stabbed three times and the pocket or pockets of his trousers were ripped, torn and/or exposed. No knife or valuables were found either on the body or in the surrounding area. Detective [James] Doyle, a robbery expert, felt that the victim had been mugged. Officer Dumas ascertained that the body was cold and displayed no vital signs upon his arrival. Dr. Hazen [Assistant Medical Examiner] felt the body was warm about 4:05 a.m. An autopsy was performed by Dr. [Stephen] Adams and Dr. [Catherine] Galvin, who attributed death to homicidal stab wounds. Defensive wounds were also discovered on the fingers of the victim's right hand. It was felt that the death would have occurred within ten minutes of the stabbing. While the exact time of death

cannot be determined, Dr. Galvin estimates it to be around 2:00 a.m., but not prior to midnight. Her opinion was based upon Dr. Hazen's report which was not in evidence."

The court stated its conclusions as follows: "By virtue of the opinion of Detective Doyle that the victim was mugged and by the manner in which the victim was forcibly taken to the rear yard by the defendant and two others, the court finds beyond a reasonable doubt that he was forcibly taken there for the purpose of robbery and that such robbery was attempted. Because of the narrowness of the time frame, the distance involved, surrounding circumstances and the logical inferences to be drawn therefrom, we find that the defendant took part in the robbery or attempted robbery of the victim, and that the victim died as a result of the wounds received in said robbery or attempt. Therefore, we conclude beyond a reasonable doubt that the defendant is guilty of murder in that when acting either alone or with one or more persons, he did commit or attempt to commit robbery, and in the course of and in furtherance of said crime, or of flight therefrom, he or another participant caused the death of a person other than one of the participants, namely Nestor Rodriguez."

The defendant contests the sufficiency of the evidence both as it relates to his alleged involvement in the underlying crime of robbery and as it relates to the alleged connection between the robbery and the murder. We consider these claims separately.

With respect to the underlying crime of robbery, there was a substantial conflict in the testimony about the appearance of the victim's clothes when his body was found. Two police officers testified that their belief that the victim had been robbed was based in part upon the fact that the victim's pants pocket had been torn.

In fact, testimony by the medical examiner and an examination of the pants themselves conclusively established that the pockets of the victim's pants had not been torn. The trial court's memorandum of decision does not resolve this conflict in the testimony and fails to indicate the proven facts upon which the court relied to conclude that a robbery had been committed and that the defendant had participated in the robbery.

With respect to the felony murder itself, there was a substantial conflict in the testimony about whether the victim was killed "in the course of and in furtherance of [the crime of robbery] or of flight therefrom." There was substantial uncertainty in the state's evidence concerning the time of death. From Hazen's examination of the body and Galvin's testimony about the relationship between that examination and the probable time of death, the trial court might have found that the victim died about 2 a.m. If the robbery occurred around midnight, there would then have been a considerable temporal gap between the robbery and the murder. The state argues that the trial court might have closed this gap by finding that the victim had died considerably earlier, nearer to midnight, if the court had found credible the police officer's testimony that the body was already cold at 2:20 a.m. when it was first discovered. The trial court's memorandum of decision contains no specific finding about the time of death.

In addition to uncertainty about the temporal proximity between the robbery of the victim and his murder, the record reveals uncertainty about the inferences to be drawn from the location of the victim's body. The defendant challenges the sufficiency of the evidence to show that the killing was in furtherance of the robbery, or in flight therefrom, when the robbery apparently occurred in a back yard behind a pool hall and the murder apparently took place in the front of a neighboring house. There was no trail of blood to the body, and

the medical testimony was that the victim would have lost consciousness within two minutes after having been stabbed and would have died within ten minutes at the outside. The trial court's memorandum of decision contains no specific finding about where the victim was murdered or what the connection was between the robbery and the murder.

On this state of the record, we cannot determine whether the state has established, beyond a reasonable doubt, the defendant's guilt of the crime of felony murder. For the proper disposition of this case, it is necessary for us to order a remand to the trial court for further articulation of the grounds on which it determined that the state had proved its case. See Practice Book § 3060D;[2] *State* v. *Lafferty,* 189 Conn. 360, 363, 456 A.2d 272 (1983); *Kaplan* v. *Kaplan,* 185 Conn. 42, 46, 440 A.2d 252 (1981); *State* v. *Ostroski,* 184 Conn. 455, 460–61, 440 A.2d 166 (1981), cert. denied, 459 U.S. 878, 103 S. Ct. 173, 74 L. Ed. 2d 142 (1982). The trial court is directed to file a memorandum of decision answering the following questions and articulating the factual basis for its answers: (1) where and when did the robbery occur; (2) how was the defendant involved in the robbery; (3) where and when did the murder occur; (4) how was the murder connected with the robbery; and (5) how was the defendant involved in the murder?

If the defendant's claim relating to the sufficiency of the evidence against him were to be resolved in his

[2] Practice Book § 3060D provides: "Sec. 3060D. REVIEW BY THE SUPREME COURT

"The supreme court may reverse or modify the decision of the trial court if it determines that the decision is clearly erroneous in view of the evidence and pleadings in the whole record.

"If the supreme court deems it necessary to the proper disposition of the cause, it may remand the case for a further articulation of the basis of the trial court's decision.

"It is the responsibility of the appellant to provide an adequate record for review."

favor, the trial court would have erred in denying his motion for acquittal. Until that claim is resolved, therefore, it is pointless to consider the defendant's other claims of error concerning the conduct of his trial.

The case is remanded to the trial court with direction to file a memorandum of decision articulating the basis upon which the court found the defendant guilty of the crime of felony murder.