STATE OF CONNECTICUT *v.* FELIX COBBS
(11487)

PETERS, C. J., HEALEY, DANNEHY, SANTANIELLO and CALLAHAN, Js.

Argued January 13—decision released March 31, 1987

*Carl D. Eisenman,* with whom, on the brief, was *Bruce L. Levin,* for the appellant (defendant).

*Susann E. Gill,* deputy assistant state's attorney, with whom, on the brief, was *Richard A. Schatz,* assistant state's attorney, for the appellee (state).

DANNEHY, J. The defendant, Felix Cobbs, appeals from a conviction and sentence for felony murder. This is the second appeal of this case. On the former appeal this court remanded the case to the trial court with direction to file a memorandum of decision articulating the basis upon which the court found the defendant guilty of felony murder. See *State* v. *Cobbs,* 198 Conn. 638, 504 A.2d 513 (1986). Briefly, the case was tried to a three judge court. The court made findings of fact, stated its conclusions thereon, and found the defendant guilty of felony murder in violation of General Statutes § 53a-54c. See *State* v. *Cobbs,* supra,

640–41. Upon remand, following our order for a further articulation, the trial court filed a supplemental memorandum of decision, and the defendant perfected this appeal. His only contention is that his conviction and the judgment based upon it are not supported by the evidence.

The defendant was tried and convicted pursuant to an indictment charging him with felony murder in violation of General Statutes § 53a-54c. The predicate felony was robbery. General Statutes § 53a-54c provides in material part that "[a] person is guilty of murder when, acting either alone or with one or more persons, he commits or attempts to commit robbery . . . and, in the course of and in furtherance of such crime or of flight therefrom, he, or another participant, if any, causes the death of a person other than one of the participants. . . ." The provisions of the statute must be strictly met. A defendant may be convicted of felony murder even though he had no intent to and did not personally kill the victim. See *State* v. *Castro,* 196 Conn. 421, 429, 493 A.2d 223 (1985); accord *State* v. *Hill,* 196 Conn. 667, 675–76, 495 A.2d 699 (1985). Essentially, it was incumbent upon the state to prove beyond a reasonable doubt: (1) that the defendant and others committed or attempted to commit a robbery; (2) that the death of the victim was caused by the defendant or one of the other participants; and (3) that the defendant or one of the other participants caused the death in the course of and in furtherance of the robbery. It is not enough, however, that the defendant committed a robbery and caused the death of the victim unless the death was a part of the robbery and directly involved in it.

The defendant contends that there was insufficient evidence to sustain a conviction under § 53a-54c. In reviewing the claim of insufficient evidence we will not weigh the evidence nor resolve questions of credibil-

ity of witnesses, but will look to that evidence and the reasonable inferences therefrom which support the findings of the trial court. *State* v. *Haddad,* 189 Conn. 383, 389, 456 A.2d 316 (1983). The conviction will be affirmed if from that viewpoint there is evidence from which the trier of fact could reasonably have inferred that the defendant was guilty beyond a reasonable doubt. *State* v. *Vincent,* 194 Conn. 198, 206, 479 A.2d 237 (1984).

The nature of the contention on appeal requires a detailed account of this case. Unfortunately, familiarity with the facts stated in our former opinion cannot be assumed. Hence, the statement of facts contained in the opinion in that case must be reproduced. See *State* v. *Cobbs,* supra, pp. 640–41.

In the trial, "[t]he court found that three men, including the defendant, on or about midnight on the evening of June 14 or during the early hours of the morning of June 15, 1980, forcibly dragged Nestor Rodriguez, the victim, to the rear yard of a pool hall located at 98 Barbour Street in Hartford. The victim had previously been observed with a foot long knife protruding from his rear waistband. Officer Leo Shoupron of the Hartford police department, in response to information provided by neighborhood onlookers, conducted a twenty-five minute search of the area at about 12:20 a.m. The site was poorly illuminated, covered with undergrowth, junk cars and litter, and he found nothing. Returning to the scene a short time later, he sought additional police assistance to continue the search. At 2:21 a.m., Officer Gary Dumas and another policeman found the body of the victim in the front yard of a house about one hundred yards from 98 Barbour Street." Id., 640.

It was also found that when the victim was discovered, " 'he had been stabbed three times and the pocket

or pockets of his trousers were ripped, torn and/or exposed. No knife or valuables were found either on the body or in the surrounding area. Detective [James] Doyle, a robbery expert, felt that the victim had been mugged. Officer Dumas ascertained that the body was cold and displayed no vital signs upon his arrival. Dr. Hazen [Assistant Medical Examiner] felt the body was warm about 4:05 a.m. An autopsy was performed by Dr. [Stephen] Adams and Dr. [Catherine] Galvin, who attributed death to homicidal stab wounds. Defensive wounds were also discovered on the fingers of the victim's right hand. It was felt that the death would have occurred within ten minutes of the stabbing.' " Id. Galvin testified that the exact time of death could not be determined. She estimated the time of death to be around 2 a.m., but indicated in her testimony that death could not have occurred around midnight. Her opinion was based upon Hazen's report which was not in evidence.

"The [trial] court stated its conclusions as follows: 'By virtue of the opinion of Detective Doyle that the victim was mugged and by the manner in which the victim was forcibly taken to the rear yard by the defendant and two others, the court finds beyond a reasonable doubt that he was forcibly taken there for the purpose of robbery and that such robbery was attempted. Because of the narrowness of the time frame, the distance involved, surrounding circumstances and the logical inferences to be drawn therefrom, we find that the defendant took part in the robbery or attempted robbery of the victim, and that the victim died as a result of the wounds received in said robbery or attempt. Therefore, we conclude beyond a reasonable doubt that the defendant is guilty of murder in that when acting either alone or with one or more persons, he did commit or attempt to commit robbery, and in the course

of and in furtherance of said crime, or of flight therefrom, he or another participant caused the death of a person other than one of the participants, namely Nestor Rodriguez.' " Id., 641.

On the first appeal, the defendant contended that the trial court erred in denying his motion for acquittal. He argued that there was a total absence of evidence both as to his alleged involvement in the underlying crime of robbery and as it related to the alleged connection between the robbery and the murder. Id. We held that because of the uncertainty in the findings of the trial court and the apparent conflicts between its various recitals, we were unable to determine whether the state established, beyond a reasonable doubt, the defendant's guilt of the crime of felony murder. Id., 643. Under these circumstances, for the proper disposition of the case, it was necessary for us to order a remand to the trial court for further articulation of the grounds on which it determined that the state had proved its case. Specific directions were contained in the mandate. The trial court was directed to file a memorandum of decision, to answer five questions, and to articulate the factual basis for its answers. Id.

It is well settled that precise and unambiguous directions in a mandate must be obeyed. See *State* v. *Lafferty,* 191 Conn. 73, 76, 463 A.2d 238 (1983). In the earlier opinion of this court, it was clearly stated: "The trial court is directed to file a memorandum of decision answering the following questions and articulating the factual basis for its answers: (1) where and when did the robbery occur; (2) how was the defendant involved in the robbery; (3) where and when did the murder occur; (4) how was the murder connected with the robbery; and (5) how was the defendant involved in the murder?" *State* v. *Cobbs,* supra. The trial court filed

an articulation.[2] An examination of the articulation plainly demonstrates that the trial court failed to file a memorandum of decision in accordance with the directions contained in the mandate. The articulation omits the factual basis for answers that are patently conclusional. For reasons unknown to us, the trial court failed to state its reasons for not articulating the factual basis for its answers.

While the failure of the trial court to follow our instructions provides strong support for further remand, certain other aspects of the case militate against such an order. This case is not like those where, because of unresolved questions of fact, this court is unable to reach the questions of law raised on appeal. See *State* v. *Lafferty,* supra. The only question that we need to consider is whether the evidence was sufficient to sustain a conviction for felony murder. We are satisfied that the record in this case now presents all of the evidence. Regardless of what action the trial court might take on further remand, we necessarily invite another appeal to this court on the question of whether there was sufficient evidence to convict the defendant of felony murder. In our opinion, to ignore this question, which can and should be answered now, serves

---

[2] "ARTICULATION

"I. Where and when did robbery occur?

"Around midnight behind 98 Barbour Street, Hartford, Connecticut.

"II. How was [the] defendant involved in robbery?

"Escorted victim from 98 Barbour Street around midnight.

"III. Where and when did murder occur?

"Around midnight behind 98 Barbour Street, Hartford, Connecticut.

"IV. How was the murder connected with robbery?

"Same participants and victim.

"V. How was [the] defendant involved in the murder?

"Escorted victim from 98 Barbour Street just before murder.

"s/_____
    John J. Daly
"s/_____
    Thomas H. Corrigan"

only to compound the error of the trial court in not complying with our mandate. In view of the record from the trial court, we are not precluded from determining whether there is merit in the appeal presented here.

In *State* v. *Jackson,* 176 Conn. 257, 258, 407 A.2d 948 (1978), this court held that it is the duty of a court to resolve all of the facts and circumstances in evidence on the theory of innocence rather than guilt. The court stated: "It is axiomatic that the state, in a criminal case, has the burden of proving every essential element of the crime charged beyond a reasonable doubt." Id. Continuing, the court stated that " 'proof beyond a reasonable doubt is such proof as precludes every reasonable hypothesis except that which it tends to support and is consistent with the defendant's guilt and inconsistent with any other rational conclusion.' " Id., 263–64. Where the state's evidence is improbable and unconvincing, we have not hesitated to reverse a judgment of conviction.

In its articulation the trial court found that the defendant had been involved in a robbery that occurred around midnight behind 98 Barbour Street in Hartford. The finding was based, apparently, on the testimony of two police officers. They testified that their belief that the victim had been robbed was grounded, in part, on the fact that the victim's pants pockets had been torn. Testimony by the medical examiner and an examination of the pants themselves, however, conclusively established that the pockets of the victim's pants had not been torn. *State* v. *Cobbs,* supra, 642. The trial court's articulation fails to indicate any other facts on which it may have relied to conclude that a robbery had, in fact, been committed. The state was, of course, required to prove a robbery or an attempted robbery to secure a conviction for felony murder.

In response to the second question, which asked how the defendant was involved in the robbery, the articu-

lation states: "Escorted victim from 98 Barbour Street around midnight." The defendant denied his presence at the pool hall on the night in question, and a state's witness, in fact, testified that he did not see the defendant at the hall that night.[3] Although another witness claimed to have seen the defendant with the victim at about 11:30 p.m. that evening, that witness conceded an inability to distinguish the defendant from his brothers. Even assuming the defendant was at the pool hall, and that he forcibly escorted the victim out of the hall, this conduct would be more consistent with the crime of assault than with the crime of robbery.

The court's articulation further states that the murder occurred at about midnight behind 98 Barbour Street. Galvin's testimony, however, indicated that the exact time of death could not be determined. She estimated, however, that the time of death was probably around 2 a.m. and further noted that death could not have occurred at about midnight. She also testified that the victim's death would have occurred within ten minutes of the stabbing. In addition, if the murder indeed occurred behind 98 Barbour Street, the articulation and the evidence offers no explanation of how the body could have gotten 100 yards away from that location to the place where it was eventually discovered. There was no trail of blood to the body and the evidence reveals that the body was found on a layer of dirt which was fairly undisturbed.

---

[3] After the defendant's conviction, he moved for a new trial. The court initially took no action on this motion. On February 16, 1982, the defendant filed an amended motion for a new trial wherein he stated that two witnesses had testified in the trial of another person charged in the death of Nestor Rodriguez that the defendant, Felix Cobbs, was not involved in the victim's death or in the underlying felony. Based on this new evidence, the defendant requested that the judgment of conviction be opened to allow the presentation of additional evidence. The court opened its judgment on May 10, 1982, heard testimony from four persons and the defendant, and subsequently affirmed its finding of guilt.

As an element of the offense of felony murder, the state had to prove that the murder occurred in the course of and in furtherance of the underlying felony. The court explained in its articulation that the connection between the robbery and the murder was that the two crimes involved the same participants and victim. This answer falls far short of establishing beyond a reasonable doubt that the victim was killed in the course of being robbed and in furtherance of that crime. Our review of the record reveals absolutely no evidence from which a trier of fact could reasonably have concluded, without resort to speculation or conjecture, that this element of the crime was established.

The court explained the defendant's role in the murder in essentially the same terms as it described his participation in the robbery. For the same reasons we rejected that response, we find that the response to the question concerning his involvement with the murder is likewise unsupported by the evidence. We note, finally, that no witness claimed to have seen the defendant commit any crime, no knife was recovered from the defendant, and no proceeds of a robbery were discovered on the defendant.

It is the rule that a trial court's finding of fact is entitled to great weight, but it is not conclusive and will be reversed where all the facts found are insufficient to prove the defendant's guilt beyond a reasonable doubt. We conclude that the evidence in this case does not establish the guilt of the defendant beyond a reasonable doubt. The judgment of the trial court must be reversed.

There is error, the judgment is set aside and the case is remanded with direction to render judgment that the defendant is not guilty and to order that he be discharged.

In this opinion the other justices concurred.