STATE OF CONNECTICUT *v.* KENNETH LASH
(8949)

DALY, FOTI and CRETELLA, Js.

Argued December 4—decision released December 25, 1990

---

*Patricia Buck Wolf,* for the appellant (defendant).

*Margaret G. Radionovas,* deputy assistant state's attorney, with whom, on the brief, was *Michael Dearington,* state's attorney, for the appellee (state).

PER CURIAM. The defendant appeals from his conviction, after a jury trial, of attempt to commit assault in the first degree in violation of General Statutes §§ 53a-59 (a) (1) and 53a-49 (a), and assault on a peace officer in violation of General Statutes § 53a-167c (a) (1).[1] The defendant claims that the evidence presented at trial was insufficient to allow the jury to find him guilty beyond a reasonable doubt. We affirm the judgment of conviction.

The jury could reasonably have found the following facts. On February 25, 1987, at approximately 6:30 a.m., Robert McKenzie left his Madison home, located west of Hammonasset State Park, to depart for work. Before leaving, he warmed up both his and his wife's cars. As he backed his wife's car to the front of the house he observed a stranger running toward him from the garage area. The person had a beard and mustache and was wearing a quilted skimobile-type suit with a hood that covered most of his head.

This person, the defendant, had a wild erratic look and talked loudly, hollering at McKenzie accusing him of stealing the car. After a brief argument about the ownership of the car and a claim by the defendant that

---

[1] The defendant was found not guilty of assault in the third degree in violation of General Statutes § 53a-61 (a) (1).

he owned United Technologies where McKenzie had stated he worked, the defendant came at him with karate moves, kicking McKenzie in the legs three times. He then stated he would get his .357 magnum and fix McKenzie. McKenzie followed the defendant as he headed toward the state park.

The police were called by McKenzie's wife, and Officer Barnett Kukta approached McKenzie just as the defendant came back toward them. McKenzie identified the defendant and warned Kukta that he thought the defendant had a gun. When the defendant reached a distance approximately fifteen to twenty yards from Kukta, he raised the weapon and pointed it at Kukta. Before Kukta ducked after seeing the defendant assume a combat stance, he had observed the defendant with a full beard, dressed in a dark jump suit, holding a stainless steel weapon with a six or eight inch barrel. The windshield of the police cruiser shattered and Kukta was struck in the face and neck by glass and bullet fragments. Kukta radioed for help and backed up his vehicle as the defendant continued to advance toward him. At about this time, Officer Robert H. Dudley, Jr., arrived, and he and Kukta took cover behind their cruisers. The defendant, who was then approximately eighty yards from them, was told at least three times to drop his gun. The defendant continued to advance and raised the gun as if to fire. Both officers then fired at the defendant. Even after he was shot, the defendant continued to advance toward the officers. He then stumbled to his knees, stood up and limped away. The officers saw a trail of blood on the road but lost sight of the defendant.

More officers arrived and a search was begun. The defendant was seen heading through nearby sand dunes toward the officers and was apprehended. At the time of apprehension, he had a full beard and was wearing

a hooded black jump suit. There was no one else in the area. The defendant was suffering from gunshot wounds and, despite the freezing temperature, was soaking wet from the shoulders down. He had in his possession two spent Winchester Western .357 magnum cartridges. A trail of blood was found between a creek and the dunes. The creek was located in an area between where the incident had begun and where the defendant had been apprehended, and a search of the creek resulted in the discovery of an operable Ruger .357 magnum with a six inch barrel. The creek was about chest deep where the gun was found. The shells found on the defendant fit the weapon found. A set of recent footprints that led up to and appeared to go into the water was seen on one side of the creek, located approximately across from where the gun had been found. In addition, the police discovered a camper belonging to the defendant in the area.

The defendant argues that the jury could not reasonably have concluded that he was the individual who had committed these crimes; that is, that the evidence with respect to his identification was insufficient to support the verdict.

" 'When an appeal challenges the sufficiency of the evidence to justify a verdict of guilty, we have a twofold task. We first review the evidence presented at the trial, construing it in the light most favorable to sustaining the verdict. . . . We then determine whether " 'the jury could have reasonably concluded, upon the facts established and the inferences reasonably drawn therefrom, that the cumulative effect of the evidence established guilt beyond a reasonable doubt.' " . . .' "(Citations omitted.) *State* v. *Carpenter,* 214 Conn. 77, 78–79, 570 A.2d 203 (1990). "It is the 'cumulative impact of a multitude of facts' that establishes guilt. *State* v. *Cimino,* 194 Conn. 210, 211, 478

A.2d 1005 (1984)." *State* v. *Sherbacow,* 21 Conn. App. 474, 480, 574 A.2d 817, cert. denied, 216 Conn. 808, 580 A.2d 65 (1990).

We must determine whether the jury could have logically reached its conclusion from the facts shown. If the jury is able to find guilt beyond a reasonable doubt without resorting to speculation, the conviction must stand. *State* v. *Osman,* 21 Conn. App. 299, 303, 573 A.2d 743, rev'd on other grounds, 218 Conn. 432, 589 A.2d 1227 (1990). It is the province of the jury to weigh the evidence and resolve questions of credibility. *State* v. *Cobbs,* 203 Conn. 4, 6–7, 522 A.2d 1229 (1987).

The cumulative impact of the evidence in this case was sufficient to enable the jury to conclude beyond a reasonable doubt that the defendant was the participant in the shooting. Kukta identified him in court as the one who had shot at him and McKenzie and Dudley corroborated the identification. The evidence, if believed, would allow the identification to be based on trustworthy eyewitness evidence, rather than merely circumstantial evidence, and reaches the quantum of proof necessary to establish beyond a reasonable doubt that the defendant was the culprit.

The judgment is affirmed.