STATE OF CONNECTICUT *v.* MICHAEL J. JARRETT
(14037)

PETERS, C. J., CALLAHAN, GLASS, COVELLO and F. X. HENNESSY, Js.

Argued March 27—decision released May 21, 1991

*Carl D. Eisenman,* public defender, for the appellant (defendant).

*Harry Weller,* assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *Herbert Carlson, Jr.,* assistant state's attorney, for the appellee (state).

PETERS, C. J. The principal issue in this appeal is whether the state sustained its burden of disproving the insanity defense tendered on behalf of a man who killed his victim as part of a mutual suicide pact. The defendant, Michael Jarrett, was charged with having committed the crime of murder in violation of General Statutes § 53a-54a (a). After a probable cause hearing established that the state had sufficient evidence to proceed, the defendant interposed a multifaceted defense of mental disease or defect and elected to be tried to a three judge panel of the Superior Court. The trial court found him guilty as charged and sentenced him to a term of imprisonment of fifty years. The defendant appealed to this court pursuant to General Statutes § 51-199 (b) (3). We affirm the judgment of the trial court.

The three judge panel could reasonably have found the following facts. The defendant and the victim became romantically involved after the victim began babysitting for the defendant's son. Because of a substantial age disparity between the defendant, who was in his thirties, and his teenage victim, the victim's mother filed a complaint that led to the defendant's conviction of risk of injury to a child, for which he received a suspended sentence conditioned on his not seeing the victim. Distressed by the efforts to enforce their separation, which the defendant and the victim knowingly tried to circumvent, they entered into a suicide pact. Each of them alluded to their plan of action in conver-

sations with a mutual friend, shortly before the fatal day; the defendant told the friend that he intended to do something that he characterized as dangerous.

On September 6, 1983, in a park in Manchester, the defendant killed the victim by stabbing her twice with his knife, and stabbed her once more after her death. Although he thereafter also stabbed himself, his three self-inflicted lacerations proved not to be fatal. When police officers arrived at the scene, they found that the defendant's clothing was stained with blood from the victim as well as from his own wounds. The defendant told a paramedic, who was examining him to ascertain the extent of his wounds, that his girlfriend was in the woods nearby and that she was dead.

In his defense against the charge of murder, the defendant formally denied that he had stabbed the victim, but relied principally on a defense of mental disease or defect. He properly notified the state, in accordance with Practice Book §§ 758 and 759, that he intended to rely upon expert evidence to put into question whether his mental condition: (1) rendered him incapable of forming the specific intent to commit murder; General Statutes (Rev. to 1983) § 53a-54a (a);[1] (2) rendered him legally insane; General Statutes (Rev.

[1] General Statutes (Rev. to 1983) § 53a-54a (a) provided: "MURDER DEFINED. AFFIRMATIVE DEFENSES. EVIDENCE OF MENTAL CONDITION. CLASSIFICATION. (a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime."

to 1983) § 53a-13;[2] or (3) demonstrated that he had committed the crime under extreme emotional disturbance. General Statutes (Rev. to 1983) § 53a-55 (a) (2).[3]

The trial court found the defendant guilty as charged. In two oral memoranda of decision, one denying the defendant's motion for acquittal and the other rendering its judgment, the court found that the defendant had killed the victim and had intended to do so. After hearing the evidence relating to the defendant's mental disease or defect, the court further determined that the testimony of lay witnesses and of the state's expert witness proved that the defendant had not lacked substantial capacity to appreciate the wrongfulness of his conduct or to conform his conduct under the requirements of the law. Accordingly, the court concluded that the state had established the elements of the crime of murder beyond a reasonable doubt.

---

[2] General Statutes (Rev. to 1983) § 53a-13 provided: "LACK OF CRIMINAL RESPONSIBILITY BY REASON OF MENTAL DISEASE OR DEFECT. In any prosecution for an offense, a defendant may be found guilty but not criminally responsible if, at the time of the proscribed conduct, he lacked substantial capacity as a result of mental disease or defect either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law. A finding of criminal responsibility shall not be barred if such mental disease or defect was proximately caused by the voluntary ingestion, inhalation or injection of intoxicating liquor or any drug or substance, or any combination thereof, unless such drug was prescribed for the defendant by a licensed practitioner, as defined in section 20-184a, and was used in accordance with the directions of such prescription. As used in this section, the terms mental disease or defect do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct."

[3] General Statutes (Rev. to 1983) § 53a-55 (a) (2) provided in relevant part: "A person is guilty of manslaughter in the first degree when . . . (2) with intent to cause the death of another person, he causes the death of such person or of a third person under circumstances which do not constitute murder because he acts under the influence of extreme emotional disturbance, as provided in subsection (a) of section 53a-54a, except that the fact that homicide was committed under the influence of extreme emotional disturbance constitutes a mitigating circumstance reducing murder to manslaughter in the first degree and need not be proved in any prosecution initiated under this subsection."

In his appeal, the defendant contends that his conviction should be set aside because: (1) he was entitled to an acquittal because the evidence at trial was insufficient to establish his guilt beyond a reasonable doubt or to establish that the state had satisfied its burden of disproving his defense of mental disease or defect beyond a reasonable doubt; and (2) he was entitled to a new trial because the trial court should not have relied on an inculpatory statement that he made to the state's psychiatric expert.[4] We are unpersuaded.

## I

The defendant has mounted two challenges to the sufficiency of the evidence to support his conviction. He urges us to hold, contrary to the trial court, that the state adduced insufficient evidence of his commission of the underlying crime or to rebut his defense of mental disease or defect. Accordingly, he contends that his midtrial and posttrial motions for acquittal should have been granted. We disagree.

## A

In his challenge to the sufficiency of the evidence to warrant his conviction of the crime of murder, the defendant questions the validity of the trial court's findings that he was the person who stabbed the victim and that his conduct was intentional. Neither of these contentions warrants extensive discussion.

Whether we review the findings of a trial court or the verdict of a jury, our underlying task is the same. See *State* v. *Evans,* 203 Conn. 212, 238, 523 A.2d 1306 (1987). We first review the evidence presented at trial, construing it in the light most favorable to sustaining

[4] The defendant has briefed one final issue, challenging the court's denial of his motions for correction of finding and for acquittal. He acknowledges, however, that this issue merely encapsulates, in procedural form, the substantive issues on which he relies for reversal of his conviction.

the facts expressly found by the trial court or impliedly found by the jury. We then decide whether, upon the facts thus established and the inferences reasonably drawn therefrom, the trial court or the jury could reasonably have concluded that the cumulative effect of the evidence established the defendant's guilt beyond a reasonable doubt. *State* v. *Weinberg,* 215 Conn. 231, 253, 575 A.2d 1003 (1990); *State* v. *Rollinson,* 203 Conn. 641, 665–66, 526 A.2d 1283 (1987); *State* v. *Garrison,* 203 Conn. 466, 471, 525 A.2d 498 (1987); *State* v. *Cobbs,* 203 Conn. 4, 6–7, 522 A.2d 1229 (1987).

In this case, the trial court could reasonably have concluded that the defendant committed the homicide on the basis of its factual findings that the defendant was discovered at the scene of the crime, close to the victim's body, covered with her blood, shortly after she had been stabbed by a knife that belonged to him. The court could reasonably have inferred that the defendant had the specific intent to cause the victim's death from its findings concerning the wounds he inflicted upon her and the contemporaneous statements he had made to others concerning the crime. With regard to the latter, it was especially probative that, at the scene of the crime, the defendant volunteered that his girl-friend was dead in the woods nearby and that he knew she was not merely unconscious but dead. Earlier, he had told a friend about his plans to do something that he himself characterized as dangerous. This record in its entirety is sufficient to sustain the trial court's conclusion that the defendant had committed the crime of murder.

B

The defendant's central challenge to the sufficiency of the evidence is his assertion that the state did not disprove his defense of mental disease or defect beyond

a reasonable doubt. At the time of this trial, the state bore the burden of proof on this defense. Although resolution of this second issue presents a closer question than the first one, we conclude that the trial court's judgment must stand.

At the trial, the defendant adduced expert testimony by two psychiatrists, Peter M. Zeman, M.D., and Walter A. Borden, M.D., and two clinical psychologists, David F. Berry, Ph.D., and John A. Cegalis, Ph.D., in support of his contention that he could not be held criminally responsible for the stabbing of the victim. These experts testified that the defendant, at the time of the stabbing, as a result of mental disease of psychotic proportion, either paranoid schizophrenia or bipolar illness,[5] lacked substantial capacity both to appreciate the wrongfulness of his conduct and to conform his conduct to the requirements of law. They agreed that the defendant's mental disease was not proximately caused by voluntary substance abuse. They described the defendant as suffering from delusional beliefs about "astroplaning," reincarnation, and the existence of life on another planet. In their view, the defendant's psychopathology genuinely led him to believe that, in stabbing the victim, he was not harming her or causing her pain but was instead enabling her to be reunited with him in another place and in another form.

To satisfy its burden of proof, the state presented Donald R. Grayson, M.D., as its own expert witness. Grayson acknowledged that the defendant was delusional and possibly psychotic. His own examination of the defendant led him to conclude nonetheless that, despite the defendant's bizarre ideation, the defend-

[5] According to Cegalis, the defendant suffered from bipolar illness rather than schizophrenia because he was a person whose mood swings from depression to euphoria. The defendant's mental condition was formerly labeled manic depressive psychosis.

ant understood that what he was doing was legally wrong even though he felt it was not morally wrong. As further evidence of the defendant's knowledgeability, the state relied on two lay witnesses, a former roommate who testified that the defendant had knowingly planned to violate the restrictions on his probation and the friend who testified of the defendant's planning to undertake, the day before the stabbing, some undefined but dangerous action.

The trial court was entitled to find credible the testimony of the state's witnesses and, on that basis, to conclude that the defendant's sanity had been proved by the state beyond a reasonable doubt. *State* v. *Evans,* supra, 238–39; *State* v. *Perez,* 182 Conn. 603, 610, 438 A.2d 1149 (1981). The court was not required to adopt the view of the defendant's expert witnesses even though they outnumbered the witnesses presented by the state. Similarly, the court was not required to disregard the view of the state's expert witness even though he conducted his mental status examination thirteen months after the occurrence of the homicide. We note, in this regard, that the defendant did not file a notice of intent to rely on a defense of mental disease or defect until nine months after the victim's death. We conclude, therefore, that the defendant has not sustained his claim of evidentiary insufficiency on the question of insanity and is therefore not entitled to acquittal of the charge against him on that ground.

## II

The defendant contends, in the alternative, even if he was not entitled to acquittal, he should be afforded a new trial. He contends that the trial court deprived him of his rights under Practice Book § 760[6] and his

---

[6] Practice Book § 760 provides: "In an appropriate case the judicial authority may, upon motion of the prosecuting authority, order the defendant

constitutional rights to due process by relying in part on a statement "on the issue of guilt" that he had made during his court-ordered examination by the state's psychiatrist, Grayson. We disagree.

Grayson testified that, in his professional opinion based on his mental status examination and his historical review of the defendant, the defendant "did have the capacity to appreciate the wrongfulness of his behavior and could have conformed his behavior to the expectation of the law." He described the mutual desperation of the defendant and the victim as the reason for their mutual suicide pact. He then explained his understanding of the defendant's mental status as follows: "[The defendant] realized that it was legally wrong but because of his system of beliefs, he did not feel it was morally wrong and since both of them would be dead, it would have no long lasting effect that would harm anybody and that they would be together." The state then asked: "And this was also—was this true of the attempt to run away, this awareness of the legal requirements concerning his relationship with [the victim]?" The defendant objected to this question on the ground that it was "not relevant," but the trial court allowed the question to be answered. The defendant asked for and was granted an exception.

To the extent that the defendant's claim rests on an alleged violation of the provision of the Practice Book, it cannot be sustained because this contention was not clearly articulated to the trial court. An objection on

to submit to a psychiatric examination by a psychiatrist designated for this purpose in the order of the court. No statement made by the defendant in the course of any examination provided for by Sec. 757, whether the examination shall be with or without the consent of the defendant, shall be admitted in evidence against the defendant on the issue of guilt in any criminal proceeding. A copy of the report of the psychiatric examination shall be furnished to the defendant within a reasonable time after the examination."

the ground of irrelevance does not suffice to alert the trial court to the exclusionary policy contained in § 760. As a general rule, we will not overturn the judgment of a trial court for alleged deviations from the rules of the Practice Book in the absence of a contemporaneous objection distinctly raising that claim at trial. Practice Book § 4185. An objection after trial[7] on a motion for acquittal does not satisfy the requirement for a contemporaneous objection.

To bypass this procedural obstacle to appellate consideration of his claim, the defendant characterizes the issue as having sufficient constitutional overtones to warrant review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), and *State* v. *Evans*, 165 Conn. 61, 70, 327 A.2d 576 (1973). In other circumstances, we have acknowledged that "[s]ection 760 of our Practice Book effects a compromise between the defendant's right to avoid self-incrimination and the state's right to procure and present evidence of the defendant's mental state when such evidence is relevant to an issue at trial." *State* v. *Boscarino*, 204 Conn. 714, 736, 529 A.2d 1260 (1987); *State* v. *Lovelace*, 191 Conn. 545, 551–52, 469 A.2d 391 (1983), cert. denied, 465 U.S. 1107, 104 S. Ct. 1613, 80 L. Ed. 2d 142 (1984). Because a court-ordered psychiatric examination may impinge on the rights of criminal defendants to due process of law, we have held that "§ 760 must be 'strictly construed to protect the fundamental constitutional

[7] The defendant claims that he called the requirements of Practice Book § 760 to the attention of the trial court in his Motion for Correction of Finding and his Motion for Acquittal. The defendant argued, at that time, that Grayson's testimony about "the objective facts should not be used in furtherance of the State's proof of the act." The state rejoined that Grayson's testimony had been offered only to substantiate its claim with respect to the defense of insanity. The court, in denying the defendant's motions, noted that "there was no single incident in the report that was written by Dr. Grayson that influenced our decision."

right to liberty.' *State* v. *Cook,* 183 Conn. 520, 522, 441 A.2d 41 (1981); *State* v. *Shockley,* 188 Conn. 697, 711, 453 A.2d 441 (1982); *State* v. *Schaeffer,* 5 Conn. App. 378, 382, 498 A.2d 134 (1985)." *State* v. *Boscarino,* supra.

The fact that an allegation of noncompliance with § 760 may sometimes have constitutional dimensions does not, however, establish the existence of such a constitutional nexus in every case. On the record in this case, we are unpersuaded, for two reasons, that the defendant has raised a claim of constitutional magnitude.

First, the state established the defendant's guilt, apart from his insanity defense, by evidence that it adduced in its case-in-chief. It did not call Grayson as its witness until the defendant had put his mental status into issue by the testimony of his expert witnesses. Grayson's testimony addressed the defendant's mental status rather than "the issue of [the defendant's] guilt" of the crime with which he was charged. He was purporting to convey his clinical impression of the defendant's state of mind rather than any specific admission of legal guilt on the part of the defendant.

The state must have the opportunity to rebut an insanity defense. But for the residual rights preserved by § 760, a defendant who has put his mental status into issue has waived any constitutional objection to the testimony of a court-appointed psychiatrist. *State* v. *Steiger,* 218 Conn. 349, 362–66, 590 A.2d 408 (1991); *State* v. *Manfredi,* 213 Conn. 500, 513, 569 A.2d 506, cert. denied,      U.S.     , 111 S. Ct. 62, 112 L. Ed. 2d 37 (1990); *State* v. *Fair,* 197 Conn. 106, 109, 496 A.2d 461 (1985), cert. denied, 475 U.S. 1096, 106 S. Ct. 1494, 89 L. Ed. 2d 895 (1986); *State* v. *Lovelace,* supra, 550; and see *Buchanan* v. *Kentucky,* 483 U.S. 402, 421–24, 107 S. Ct. 2906, 97 L. Ed. 2d 336, reh.

denied, 483 U.S. 1044, 108 S. Ct. 19, 97 L. Ed. 2d 807 (1987). Our law "strikes a balance between the legitimate needs of the state and the cognizable rights of the defendant. On the one hand, without access to a psychiatric report, the state cannot respond intelligently to defenses that concern a defendant's mental status. On the other hand, the state's use of information obtained by court-appointed psychiatrists is not unlimited. The state may not rely on statements made by the defendant during a compulsory psychiatric examination to meet its affirmative burden of proving the defendant's guilt in any criminal proceeding." *State* v. *Fair,* supra, 110–11; cf. *United States* v. *Cohen,* 530 F.2d 43, 47–48 (5th Cir. 1976); *Lee* v. *County Court of Erie County,* 27 N.Y.2d 432, 267 N.E.2d 452, 318 N.Y.S.2d 705 (1971). An ambiguous claim of evidentiary noncompliance with § 760 does not establish that the prosecutor has crossed over into the forbidden territory of constitutional misuse of statements elicited in a compulsory psychiatric examination and thus does not warrant belated plenary review.

Second, before Grayson took the stand, the defendant's expert witnesses had already testified, without objection, about their interviews with the defendant. Their testimony had described in detail the defendant's prior relationship with the victim, his reluctance to suspend that relationship, and the circumstances that led to the mutual suicide pact and the stabbing of the victim. The defendant has cited no authority, and our research has discovered none, to suggest that a defendant has a due process right to exclude testimony from a state's witness that corroborates testimony previously elicited by the defendant from his own witnesses. Once the defendant has waived his constitutional protection against self-incrimination in the presentation of his defense, he has no basis for a further constitutional objection to testimony to the same effect that is

proffered by a court-appointed psychiatrist. See *Buchanan* v. *Kentucky,* supra. Even if Grayson's testimony could be construed as relevant to the defendant's guilt of the crime charged, therefore, its admission would not give rise to a constitutional claim in the circumstances of this case. See *State* v. *Steiger,* supra; *State* v. *Manfredi,* supra; *State* v. *Fair,* supra; *State* v. *Lovelace,* supra, 550.

The judgment is affirmed.

In this opinion the other justices concurred.